NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0661n.06

No. 09-6401

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

7 Sept 2011

LEONARD GREEN, Clerk

JULIE MELISSA GERONIMO,               )
                                       )
        Plaintiff-Appellant,           )      ON APPEAL FROM THE
                                       )      UNITED STATES DISTRICT
                                       )      COURT FOR THE
v.                                     )      WESTERN DISTRICT OF
                                       )      TENNESSEE
CATERPILLAR, INC.; CATERPILLAR,        )
                                       )             O P I N I O N
        Defendants-Appellees.          )


BEFORE:    McKEAGUE and WHITE, Circuit Judges; and Zouhary, District Judge.[*]

**McKeague, Circuit Judge.** Julie Melissa Geronimo sued her former employer, Caterpillar, Inc. and Caterpillar (collectively "Caterpillar") for retaliatory discharge, after she was terminated for failure to promptly report a work injury. Geronimo alleged that under the Tennessee Workers' Compensation Law ("TWCL"), Tennessee Code Annotated § 50-6-101, et seq., she was entitled to thirty days in which to report her gradual-onset carpal tunnel. Thus, according to Geronimo, Caterpillar's company policy requiring that employees report such injuries immediately or within forty-eight hours, and its decision to terminate her for failure to adhere to this policy, constituted retaliatory discharge for exercising her rights pursuant to the TWCL. Geronimo's argument, however, is premised upon an incorrect reading of the relevant statutory provision, and for the reasons that follow, we DENY Geronimo's motion to certify a question of law to the Tennessee

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

Supreme Court and AFFIRM the district court's opinion granting summary judgment in favor of Caterpillar.

## I. BACKGROUND

Geronimo worked for Caterpillar at its Dyersburg, Tennessee facility as an employee-at-will for approximately seven-and-a-half years, from March 27, 2000 until her termination on August 15, 2007. After giving her advanced notice in June 2007, Caterpillar transferred Geronimo from her prior position as a machinist to an "assembler position" on July 9, 2007. After Geronimo started her new position, she began to experience pain while completing the tasks required of her as an assembler. The first time she had to press down the clutch plates on the assembly machine, she experienced "some pain" in her hands. She explained that it was "like strain, muscle strain," in her palms, upper arms, and fingers. When asked how strong the pain was, using a one to ten scale with ten being "unbearable pain," Geronimo indicated that the pain was approximately a four. However, she noted that after she let go of the machine the pain would stop. At the end of her first day, Geronimo felt that her muscles were "tight," and when she awoke the next morning her hands and arms felt stiff and she again experienced pain in her hands while working her shift, though it stopped each time she released the machine.

For approximately two weeks, the pain in Geronimo's hands continued at this level. During this time she felt like "blood would rush back into" her hands when she released the machine and she needed to do stretches to help relieve the pain. After approximately three weeks, Geronimo asked two of her co-workers if they had experienced any muscle soreness or pain when they first started working as assemblers. Both indicated that they had some soreness but that it got better. One

female co-worker specifically told Geronimo that it was not a "painful" job for her. After approximately four weeks on the job, Geronimo noticed that while she was holding a telephone or holding the steering wheel while driving her hands would start to go numb and tingle, which she believed was caused by the tasks she completed at work.

Around August 1, 2007, Geronimo began to suspect that she had carpal tunnel syndrome and decided to look it up on the internet, although she could not confirm her suspicions. Almost two weeks later, on August 14, 2007, Geronimo spoke with a nurse at Caterpillar, which was the first time she had spoken with anyone from Caterpillar's management team about the pain she was experiencing in her hands. A few days before seeing the nurse, Geronimo thought she may need to have surgery, which she had learned was an option while researching on the internet. She finally decided to speak with the nurse about her pain when she realized that, although the pain had previously gone away at night or on the weekends when she was not working, the weekend prior to the nurse visit the pain did not go away and she was "waking up at night that weekend with pain in [her] hands, and the numbness after the weekend was over" was not any better. She stated that her pain had reached a 9.75 out of ten by that weekend, and had increased gradually since her first day of work.

When she spoke to the nurse, Geronimo informed the nurse that she was experiencing so much pain in her hands that it was "to the point [she] wanted them cut off," that she had begun waking up at night because of the pain, and that it "felt like rubber bands were tied around [her] wrists" and that her "hands were going to explode." She admitted that the pain was waking her up at night as early as the middle of the week prior to her visit to the nurse, on or about August 8. When

the nurse asked Geronimo why she had not come sooner, Geronimo told her that she thought it was muscle soreness she could work through, "because [she] needed [her] job." When asked at her deposition why she did not report her pain on Monday, August 13, Geronimo stated that she "thought [she] would give it one more shot, try to work through it," because she was afraid that she had no "other options than to do the job." Geronimo believed that if Caterpillar found someone else to do her job, there would be no other job for her. She also admitted that she did not tell her supervisor about the pain she was experiencing because she "didn't want him to think [she] couldn't do the job" or that she was "having a problem with it," because she believed that it would be "short-lived."

After Geronimo explained her symptoms to the nurse, the nurse informed Geronimo that she would try to set up an appointment for Geronimo to see a doctor. However, the next day Geronimo was informed that she was being fired for "not meeting [Caterpillar's] expectations" because of her "failure to communicate an injury in a timely manner." Specifically, under Caterpillar's company policy, employees can be disciplined for "business abuse," which includes violations of the company's safety rules. One of these safety rules, which Geronimo admitted she was informed of at the required weekly safety meetings she attended as well as at other employee presentations, was to report the occurrence of injuries immediately or, if the injury was gradually-occurring, to report it as soon as an employee realizes they are injured and suspects it is work related. Verbally, Caterpillar clarified this requirement and informed its employees that if they sustain a gradually-occurring injury, it must be reported within forty-eight hours.

These safety rules are enforced by the "Business Abuse and Behavior Correction Process," which is a five-level corrective process. Employees are informed that "[c]ertain acts of misconduct

or procedure violations will not be tolerated and could result in an immediate jump to Phase 3/4 or immediate termination." Because Geronimo failed to report her injury as required by company policy, she was fired.

In August 2008, Geronimo filed a complaint alleging that Caterpillar unlawfully terminated her "in direct retaliation for making a claim for benefits and/or asserting her right to benefits under [§ 50-6-201 (b) of] the TWCL," which governs the provision of notice of a work-related injury. Caterpillar then filed a motion for summary judgment and, in turn, Geronimo filed a partial motion for summary judgment solely on the issue of Caterpillar's liability.

The court ruled that "[a]lthough Tennessee Code Annotated § 50-6-201 allows an injured party to file a claim for worker's [sic] compensation benefits as long as that party gives notice to the employer within thirty days of the injury, nothing in the statute shields the employee from all consequences of postponing or failing to give the employer notice until right before an employee's worker's [sic] compensation claim would be time-barred." In analyzing the relevant statutory provision, the district court concluded that subsection (a) of the statute requires immediate notice by all employees, "not just those injured employees with non-gradual, non-cumulative injuries." Thus, the court reasoned that "[s]ubsection (b) does not exempt employees who suffer gradually occurring injuries from notifying their employers immediately or as soon as they become aware of their work-related injury," but rather it "recognizes that there may need to be a variation to subsection (a)'s thirty day period for claims when the 'occurrence of the injury' is unclear." The court also held that "the plain language of the statute does not establish a public policy prohibiting employers from requiring employees to report work-related injuries immediately." Accordingly, the

court denied Geronimo's motion for partial summary judgment and granted Caterpillar's motion for summary judgment. Geronimo filed a timely notice of appeal.

## II. ANALYSIS

**Motion for Summary Judgment**

This court reviews a district court's summary judgment order de novo. *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1025 (6th Cir. 2010). "'In reviewing a grant of summary judgment on cross-motions seeking such relief, we apply the same legal standards as the district court: whether, with the evidence viewed in the light most favorable to the non-moving party, there are no genuine issues of material fact, so that the moving party is entitled to a judgment as a matter of law.'" *In re Arctic Express Inc.*, –F.3d–, No. 09-3463, 2011 WL 722211, at *6 (6th Cir. Mar. 3, 2011) (quoting *United States v. Petroff-Kline,* 557 F.3d 285, 290 (6th Cir. 2009)).

In Tennessee, it is well-established that "an employee-at-will can be discharged without breach of contract for good cause, bad cause or no cause at all." *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 443 (Tenn. 1984). However, the Tennessee Supreme Court has crafted exceptions to this rule, the first of which it articulated in *Clanton*. Having determined that Tennessee had a clear public policy in favor of protecting employees who sought workers' compensation, the Court held that a cause of action existed for retaliatory discharge when an employee exercises her rights under the TWCL and then is terminated by her employer for doing so. *Id.* at 444–45. The court later clarified that in order "to establish a cause of action for discharge in retaliation for asserting a workers' compensation claim," a plaintiff must show that: (1) she "was an employee of the defendant at the time of the injury;" (2) she "made a claim against the defendant for workers' compensation

benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers'

compensation benefits was a substantial factor in the employer's motivation to terminate the

employee's employment." *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993).

On appeal, Geronimo argues that Caterpillar was not entitled to summary judgment because

the company terminated her in retaliation for exercising a right conferred on her by the TWCL.

Specifically, Geronimo's argument rests upon interpretation of Tennessee Code Annotated § 50-6-

201, which governs the reporting of injuries for the purpose of later filing a claim for workers'

compensation. This section provides:

> (a) Every injured employee or the injured employee's representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation that may have accrued under this chapter, from the date of the accident to the giving of notice, unless it can be shown that the employer had actual knowledge of the accident. No compensation shall be payable under this chapter, unless the written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

> (b) In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or the injured employee's representative shall provide notice of the injury to the employer within thirty (30) days after the employee:

> > (1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or

> (2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Tenn. Code Ann. § 50-6-201.

Geronimo admitted during her deposition that she was not claiming that Caterpillar ever tried to make examples of people who turned in injury reports by firing them, nor was she claiming that they were "out to get" her or "trying to get back" at her for filing a workers' compensation claim. In fact, Geronimo filed a workers' compensation claim, which was not disputed by Caterpillar, and she received a settlement for her injury and had surgery to remedy her carpal tunnel, which was paid for by Caterpillar.

Rather, Geronimo argues that because § 50-6-201 permits employees to report gradually-occurring work injuries within thirty days of the injury for the purpose of seeking workers' compensation, Caterpillar's policy requiring employees to report such injuries immediately or within forty-eight hours of the injury, and authorizing termination of the employee for failure to comply with the employer's reporting requirements, violates the public policy of Tennessee established by § 50-6-201. Geronimo asserts that because the reporting of her injury was protected by Tennessee public policy, her termination by Caterpillar for failure to report her injury amounts to retaliatory discharge for exercise of her rights under the workers' compensation laws.

Although Geronimo is correct that the statute gives her thirty days in which to report a gradually-occurring injury for the purpose of later filing a claim for workers' compensation, she

overlooks two essential elements of the statute that ultimately foreclose her claim. First, despite her arguments to the contrary, § 50-6-201(b) does not eliminate the requirement that an injury be reported immediately, as required by § 50-6-201(a). The text of the statute makes clear in subsection (a) that "*every* injured employee . . . *shall* immediately" report an injury to her employer, regardless of the nature of that injury. Tenn. Code Ann. § 50-6-201(a) (emphasis added). It then explains that "[n]o compensation shall be payable" for sustained injuries if written notice is not given within thirty days "after the occurrence of the accident." *Id.*

Subsection (b) was added by the legislature to amend the statute in 2001. That subsection clarifies the latter portion of subsection (a) dealing with the maximum time allowable for reporting injuries in order to obtain compensation and explains what constitutes the "occurrence" of an injury when such an injury is gradually-occurring. Subsection (b) explains that if the injury is "the result of gradual or cumulative events or trauma," then the "occurrence" of the injury, and correspondingly the start of the employee's thirty-day window for providing written notice, will be either (1) when the employee knows or reasonably should know that she "has suffered a work related injury that has resulted in permanent physical impairment" or (2) when the employee can no longer perform "normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities." *Id.* at § 50-6-201(b).

Thus, the plain terms of subsection (b) do not exempt an employee from the first part of subsection (a) requiring immediate notice. Instead, § 50-6-201(b) simply recognizes that with gradually-occurring injuries, the "occurrence" of the injury is not necessarily identifiable by the

employee at the precise moment of onset, as with an immediate and concrete injury, such as a broken bone. Accordingly, subsection (b) provides clarification for employees who sustain gradually-occurring injuries as to what specific conditions, namely permanent physical impairment or an inability to perform normal work activities, trigger the thirty-day window for providing notice. *See Banks v. United Parcel Serv., Inc.*, 170 S.W.3d 556, 561 (Tenn. 2005) (explaining that subsection (b) "recognizes that although by definition a gradually-occurring injury occurs over time, some date must be chosen to trigger the notice requirement," therefore "employees are relieved from the notice requirement until they know or reasonably should know that their injury was caused by their work and that the injury has either impaired them permanently or has prevented them from performing normal work activities").

Second, although the statute permits an employee to provide notice within thirty days for the purpose of obtaining workers' compensation, it does not expressly prohibit or establish a public policy prohibiting an employer from imposing separate notice requirements for workplace injuries. The Tennessee Supreme Court has made clear that it "does not engage in hypothetical guessing to fashion public policy." *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn. 1997). Moreover, "the exception cannot be permitted to consume or eliminate the general rule." *Chism v. Mid-South Milling Co., Inc.*, 762 S.W.2d 552, 556 (Tenn. 1988). Therefore, "[t]o be liable for retaliatory discharge . . . , the employer must violate a clear public policy" that is "evidenced by an unambiguous constitutional, statutory or regulatory provision." *Id.*; *see also Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002) (explaining that "the elements of a typical

common-law retaliatory discharge claim" are discharge of an employee-at-will, where "the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision," and that exercise of rights was "a substantial factor" in the discharge of the employee).

Here, Geronimo argues that her "exercise of rights" under the TWCL includes notifying her employer of her injury pursuant to § 50-6-201(b), and therefore is a protected act. Yet, Geronimo does no more than present conclusory arguments about the existence of a public policy, and nothing in the statutory language evinces an unambiguous directive preventing companies like Caterpillar from implementing reporting requirements for the purpose of safety. The statute merely grants employees the right to wait thirty days to file their notice of injury and still receive workers' compensation, and that is exactly what Geronimo was able to do. *See Clanton*, 677 S.W.2d at 444 (explaining that "the Workers' Compensation Law is a comprehensive scheme enacted to provide a certain and expeditious remedy for injured employees" that "reflects a careful balancing of the interests of employer and employee"). There is simply nothing in the language of § 50-6-201 that gives an employee the right to violate her employer's reporting requirements, or that demonstrates an intent to foreclose on the ability of employers to regulate injury reporting for the purpose of workplace safety.[1]

---

[1]The dissent points to *Lawson v. Lear Seating Corp.*, 944 S.W.2d 340, 343 (Tenn. 1997) for the proposition that, as a matter of Tennessee law, Geronimo's injury did not "occur" until the day she was no longer able to work, and thus Caterpillar should have found that she complied with its reporting requirements. This argument conflates what is allowed under workers' compensation

If Geronimo's assertion regarding the public policy embodied in § 50-6-201(b) was correct, it would give employees the opportunity to aggravate existing work injuries, potentially compromise the safety of other individuals, and prevent their employers from providing possible remedies for gradually-occurring injuries at the earliest possible date, by choosing not to report their injuries for days, or even weeks, after the employee realizes she has been injured.[2] Moreover, although the statute grants an employee a *maximum* of thirty days in which to report the injury and still obtain workers' compensation, the language itself not only mandates immediate reporting by all employees, but provides incentive to do so by refusing to allow payment of physician's fees or compensation for the period of time between when the injury occurred and when the employee provided notice of the injury. *See* Tenn. Code Ann. § 50-6-201(a).

Geronimo also attempts to argue that Caterpillar's policy forces employees to either keep their injuries hidden and remain employed, or report their injuries and subject themselves to possible termination. Such an argument is simply incorrect based on the facts in the record. The policy established by Caterpillar requires timely reporting, and so long as reporting is timely, there is no

jurisprudence with what is required of employers in their internal safety dealings. Although Tennessee workers' compensation law may allow the date of an employee's injury to be measured from when that employee was no longer able to work, that does not compel employers to use the same measuring date when crafting their on-the-job safety reporting requirements.

[2]In a Declaration by Rhonda Lee, the Human Resources Manager at Caterpillar's Dyersburg facility, it was explained that "[t]he reason for the rule requiring immediate reporting of work-related injuries is that, in Caterpillar's view, late reporting of injuries can result in otherwise avoidable aggravation of those injuries, whereas timely reporting will allow the problems to be addressed before they become severe and may also help to prevent other employees from becoming similarly injured."

disciplinary action. Additionally, Geronimo overlooks the fact that, regardless of whether or not she ultimately filed a claim for workers' compensation, she still violated Caterpillar's reporting policy and would have been subject to termination if she failed to report the injury and Caterpillar was otherwise notified of that injury by another employee who was aware of Geronimo's injury. Accordingly, we find that the district court did not err when it determined that Caterpillar could not be liable for retaliatory discharge and entered summary judgment its favor.

**Motion to Certify**

Geronimo has also filed a motion to certify a question of law to the Supreme Court of Tennessee regarding whether the public policy of Tennessee requires the immediate reporting of all work-related injuries in light of the language in § 50-6-201, and whether an employer can "promulgate and enforce by the sanction of termination of employment a policy that requires employees to report gradually occurring work-related injuries immediately (or even within forty-eight hours) after learning that an injury is or may be occurring," in light of the existing language in the TWCL. Although the issue may be a matter of first impression under Tennessee law, because this court is able "to make a clear and principled decision" that the district court did not err in finding that the statute was clear and that Caterpillar was not liable, certification would not be appropriate. *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009); *see also In re Century Offshore Mgmt. Corp.*, 119 F.3d 409, 415 (6th Cir. 1997) ("Certification is 'most appropriate where the question is new and state law is unsettled.'") (quoting *Transamerica Ins. Co. v. Duro Bag Mfg. Co.,* 50 F.3d 370, 372 (6th Cir. 1995)).

- 13 -

Furthermore, as this court has previously noted, certification is disfavored where a plaintiff files in federal court but then, "in light of an unfavorable judgment, seek[s] refuge" in a state forum. *Local 219 Plumbing & Pipefitting Indus. Pension Fund v. Buck Consultants, LLC*, 311 F. App'x 827, 831 (6th Cir. 2009). Similarly, we have also made clear that "[t]he appropriate time to seek certification of a state-law issue is before a District Court resolves the issue, not after receiving an unfavorable ruling." *Id.* (internal quotation marks omitted); *see also St. Paul Fire & Marine Ins. Co. v. Cassens Transport. Co.*, 86 F. App'x 869, 873 (6th Cir. 2004) (noting in a denial of a motion to certify that "St. Paul filed its complaint for contribution in federal court, without claiming that Ohio law was unsettled, and its request for certification came only after losing in the district court").

### III. CONCLUSION

Accordingly, for the reasons set forth above, we DENY the motion to certify a question of law to the Tennessee Supreme Court and AFFIRM the judgment of the district court.

**HELENE N. WHITE, Circuit Judge** (dissenting). Because I conclude that the Tennessee Supreme Court would find Caterpillar's action in terminating Geronimo's employment based on her purported failure to timely report her injury contrary to Tennessee law, I respectfully dissent.

Caterpillar has consistently argued that Geronimo was terminated for failing to comply with the company's written policy on reporting workplace injuries, which requires employees to "notify the Company promptly [*i.e.*, within 48 hours] after they realize they are injured and suspect that the injury is related to their work." (R. 19, Lee Decl., at ¶ 5.) According to Caterpillar, Geronimo violated this policy because she realized or suspected that her injury was work related several days or even weeks before she went to the company nurse.

Under established Tennessee law, carpal-tunnel syndrome is an accidental injury that is deemed to have occurred on the date the employee can no longer perform her work. In *Lawson v. Lear Seating Corp.*, 944 S.W.2d 340, 340 (Tenn. 1997), an employee ("Lawson") experienced increasingly painful carpal-tunnel symptoms over the course of several years working for the same company. On the suggestion of her doctor, Lawson transferred to different positions within the company in order to alleviate the problem; each time, her symptoms abated temporarily, only to return. *Id.* As the pain worsened and spread to her arms and shoulders, Lawson received monthly injections to reduce the pain. *Id.* Eventually, Lawson notified the company nurse and was formally diagnosed with carpal-tunnel syndrome; despite undergoing surgery, Lawson suffered 10% permanent partial impairment in her hands. *Id.* at 341. Lawson sued to recover permanent partial-disability benefits, but a Special Workers' Compensation Appeals Panel of the Tennessee Supreme

Court determined that her claim was time-barred because she did not file it within one year of the "accident resulting in the injury," as required by T.C.A. § 50-6-203(b)(1). *Id.* Lawson appealed to the Tennessee Supreme Court, which observed that "[t]he identification of the 'accident resulting in the injury' is problematic" in cases of repetitive-stress injuries like carpal-tunnel syndrome. *Id.* For guidance, the court looked to *Berry v. Boeing Military Airplanes*, a Kansas Court of Appeals case that held:

> We . . . conclude that the last day of work should be the date from when disability is computed in all cases involving carpal tunnel syndrome . . . . If we were to adopt either the date on which the injury "manifests itself" or the date on which the injury is "diagnosed," we would set a potential trap for the individual who, despite pain and discomfort, continues to work long after his or her carpal tunnel is "diagnosed" or has "manifested itself." Those individuals would find their claims for compensation barred by the statute of limitations. It seems to us that we should adopt the rule that causes the least potential prejudice and upholds the spirit of our Workers Compensation Act. We believe use of the last day of work accomplishes both of those purposes.

885 P.2d 1261, 1267-68 (Kan. Ct. App. 1994) (*quoted in Lawson*, 944 S.W.2d at 342) (second ellipsis in *Lawson*). The Supreme Court of Tennessee found *Berry*'s policy rationale especially persuasive, stating:

> Like the Kansas statute, our workers' compensation statute is remedial in nature. Tenn. Code Ann. § 50-6-116. As we stated in *Betts v. Tom Wade Gin*, 810 S.W.2d 140[, 142-43] (Tenn. 1991),
>
>> this Court must interpret those statutes in a manner designed to protect workers and their families from the economic devastation that, in many instances, can follow on-the-job injuries. Furthermore, Tennessee's workers compensation laws must be construed so as to ensure that injured employees are justly and appropriately reimbursed for debilitating injuries suffered in the course of service to the employer. [(footnote omitted).]

*Lawson*, 944 S.W.2d at 342. The court noted that in cases where carpal-tunnel syndrome results from a traumatic event, "the statute of limitations would begin to run when by reasonable care and diligence the compensable injury is discoverable and it is apparent that such injury is work-related." *Id.* at 343 (*citing Livingston v. Shelby Williams Ind., Inc.*, 811 S.W.2d 511, 515 (Tenn. 1991)). However, since Lawson's injuries were the product of repetitive stress, the court held that the limitation period for filing a workers' compensation claim began to run on the day that Lawson was unable to perform her job:

> As in *Barker*, the repetitive movements of Lawson's hands as she performed her job caused her injuries. Each day Lawson worked contributed to her injury. Because there is no one particular incident or event identifiable as an "accident resulting in the injury" and because Lawson suffered new trauma to her hands each day she worked, we hold that *the date of the accidental injury is the date that Lawson was no longer able to work because of her injury.* 944 S.W.2d at 343. [Emphasis added.]

To be sure, *Lawson* involves the denial of a claim for permanent disability benefits, while the issue here is whether Geronimo's termination violated Tennessee law. However, this distinction does not alter *Lawson*'s core holding: As a matter of Tennessee law, carpal-tunnel syndrome "occurs" and the employee suffers an injury on the day when the employee is no longer able to work.

*Lawson* was decided in 1997, four years before the Tennessee Legislature clarified the notice rules for gradually-occurring injuries by enacting T.C.A. § 50-6-201(b). However, subsection (b) was not intended to modify the existing common law. Quite to the contrary; as the Tennessee Senate explained in summarizing the amendment:

> This bill would require an injured employee with a workers' compensation claim for an injury based upon gradual or cumulative events or trauma to provide written notice to the employer within 30 days after the employee: (1) Knows or should know that the employee has suffered a work-related injury resulting in permanent physical impairment; OR (2) Is rendered unable to continue performing normal work activities as a result of the injury, provided that the employee knows or should know that the injury was caused by work-related activities. Under present law, the general notice provisions apply to such injuries, which is 30-days' written notice from the date of the injury, unless there is a reasonable excuse. *This bill is consistent with Tennessee case law.* For example, in the case of *Lawson v. Lear Seating Corp.*, 944 S.W.2d 340 (Tenn. 1997), the Tennessee Supreme Court held that the statute of limitations started to run when the employee at issue was unable to perform her job. The employee in that case had worked for several years while suffering from carpal tunnel syndrome and never filed a workers' compensation claim. When the employee's condition became such that she could no longer work, she then filed her claim.

Tenn. Bill Summ., 2001 Reg. Sess. S. B. 1404 (emphasis added). There is no doubt that subsection (b) was intended to integrate the holdings of *Lawson* and other state cases on gradually-occurring injuries into the TWCL's statutory framework.

Thus, because Tennessee law unequivocally provides that a gradually-occurring injury "occurs" on the date the employee is no longer able to perform her work, and in this case that day was August 14, 2007, the same day Geronimo informed the company nurse of her injury,[1] Geronimo complied with Caterpillar's 48-hour injury-reporting policy, and Caterpillar's conclusion to the contrary runs counter to the Tennessee Supreme Court's Workers' Compensation jurisprudence. For this reason, I would reverse the decision of the district court.

---

[1]Geronimo testified that she did not return to her regular workstation after speaking to the nurse. Instead, she sat in the break room for a long time, presumably while her supervisors decided what task to give her; eventually, she was sent to take computer classes. The next day, Geronimo was assigned to help out in the office until the morning break, when she was called to her supervisor's office and terminated.