R.C. LIVINGSTON, Plaintiff–Appellee,

v.

SHELBY WILLIAMS INDUSTRIES, INC., Defendant–Appellant.

Supreme Court of Tennessee, at Knoxville.

April 8, 1991.

Rehearing Denied June 10, 1991.

William R. Seale, Mark C. Travis, Wimberly, Lawson & Cobb, Morristown, for defendant-appellant.

Frank P. Cantwell, Jr., Capps, Foutch & Cantwell, Morristown, for plaintiff-appellee.

## OPINION

REID, Chief Justice.

This workers' compensation case presents an appeal by the employer from the judgment of the trial court awarding the employee temporary total disability benefits and 70% permanent disability benefits to the body as a whole.

The employer assigns for review notice, the statute of limitations, and the sufficiency of the evidence.

The record supports the judgment of the trial court.

The employer contends that the employee did not give timely notice of the injury, that the suit filed on December 22, 1987, is barred by the statute of limitations, and that the evidence does not support the court's finding that the accident caused the injury.

The employee contends that the employer had actual knowledge of the accidental injury and, further, that because the injury initially was manifest only by minor bruises and soreness and was not determined to be significant until several months later,

the requirements to give notice and file suit within the statutory times were suspended.

The record shows that in October or November of 1986, Livingston, the plaintiff-appellee, fell through some crates while loading chairs and other items onto a truck at the employer's chair factory. Livingston contends the fall injured his back, eventually requiring the surgical removal of a herniated intervertebral disc in July 1987 and further surgery to remove a "fragment" of the disc in September 1988.

At the time of the accident, the employee was 37 years of age, was married, and had been gainfully employed in woodworking and farming since he was 17. The trial court found the employee was not able to read or write, and "is a person with a very low IQ and has great difficulty in remembering dates, names, places and the sequence of events in his life." During his two-year employment with the appellant, appellee had operated a leveling saw, a "grinder," and he had inspected chairs and performed odd jobs such as loading trucks. He had not sustained any prior injury or experienced any prior trouble with his back.

On the day of the accident, Livingston and another employee, Collins, had almost finished loading a truck with crates of chairs when the employer's foreman told them some stool bases had to be placed at the front of the truck. While carrying one of those items across the crates, the plaintiff lost his footing, and one leg fell between the crates. He asked Collins, who was handing the stools to him, to "hold up" a few minutes while he recovered from the fall. The only superficial injuries sustained were minor bruises to his leg. The plaintiff testified that when he came out of the truck he told the foreman he had fallen and that walking across the crates was dangerous. He also testified that he told the foreman the next day he had bruised his leg when he fell in the truck. Collins testified he saw the plaintiff fall and saw him sit down for several minutes before starting to work again. He testified that the plaintiff told the foreman he had fallen inside the truck and that the foreman re-plied he should be more careful. The foreman testified the plaintiff "did not report an on-the-job injury," that accident reports were made only "if there's an accident that requires professional treatment" and, further, that he would not have reported the fall unless it required medical attention.

According to the plaintiff, "it hurt for two or three days and then it eased off," and he did not see a physician because, as he said, "I didn't think there was nothing the matter with me that bad." He continued to work until the company layoff in January 1987. During the layoff from January until June, he "just laid around and fished." He testified he was "a little uncomfortable [but] didn't think there was nothing to be concerned about." After he returned to work in June 1987, the pain in his back became increasingly severe. According to the plaintiff, his back "wasn't that bad" until he came back to work and started twisting and turning while lifting chairs. He took large quantities of over-the-counter medication and, because of the pain, was not able to work regularly. He complained to his foreman about his back pain "about every night," but, in those complaints, he did not relate his pain and disability to the fall. The foreman acknowledged that Livingston "did complain with his lower back hurting him" and stated he advised Livingston "he needed to have it checked out and needed to see a doctor if his back was hurting." The foreman did not advise him to see a company doctor because, according to him, "there never was reported an accident to me."

In June 1987, because the pain continued to become progressively worse, Livingston, for the first time, sought medical advice. He saw a local physician, who referred him to Dr. Carlson, an orthopedic surgeon. Dr. Carlson recommended procedures that required hospitalization, and Livingston informed the foreman that when the company shut down for the July 4 vacation he was going to be admitted into the hospital. On June 19, 1987, Dr. Carlson diagnosed his condition as a herniated disc at the L5–S1 level. He testified Livingston gave no history of specific trauma, but he did relate the pain in his back to his work lifting

stacks of chairs. The disc was excised by Dr. Carlson on July 28, 1987. Dr. Carlson testified that, in his opinion, injury to the disc was the result of trauma. Dr. Carlson further testified that repeated lifting or bending can aggravate a damaged disc and cause further herniation and increased pressure on the nerve root. The plaintiff continued to see Dr. Carlson until December 22, 1987.

The plaintiff testified he did not relate his back injury to the fall in the truck until he and Dr. Carlson discussed the cause at a post-operative visit. The plaintiff described the fall and asked Dr. Carlson if "that twisting and turning" could have caused the injury, to which Dr. Carlson responded in the affirmative. Mrs. Livingston, who accompanied her husband on the visit to Dr. Carlson on October 6, 1987, testified, "We were trying to think if he had done anything to hurt his self and that was the only thing. That was the only thing." She further testified that immediately after that visit to Dr. Carlson, which occurred on October 6, 1987, she told the employer's nurse, on a visit to report information for health insurance purposes, that Dr. Carlson believed the injury was work related. This report by the wife to the nurse was confirmed by the nurse's notes.

The plaintiff testified that he continued to have severe pain in his back but that he did not see Dr. Carlson after December 1987 "because he was not doing me any good."

In July 1988, Livingston saw Dr. Purvis, a neurosurgeon. According to Dr. Purvis's testimony, the plaintiff stated he was injured when he fell while loading or unloading a truck in October 1986, he was not able to work because of pain in his back when he went back to work after the layoff, and he was operated on for a ruptured disc by Dr. Carlson in 1987. Dr. Purvis testified that results of tests received from the referring physician indicated a ruptured disc. In September 1988, Dr. Purvis removed a "fragment" from L5–S1, a condition Dr. Purvis described as a "complication of the first surgery." Dr. Purvis expressed the opinion that, based on the history given by the plaintiff and his medical findings, the fall in the truck was the cause of the plaintiff's back injuries. Dr. Purvis continued to see the plaintiff until February 3, 1989, when, in Dr. Purvis's opinion, he reached maximum recovery.

The trial court found the plaintiff did not give notice within thirty days of the date of the accidental injury but excused the failure to give notice because "the plaintiff acted reasonable [sic], considering the type of injury, and his ability to understand what a work-related injury really was." The trial court found that there was "a gradual onset" of the injury and that the employee gave notice as soon as he realized he had sustained an injury. The court further found the statute of limitations was "suspended until by reasonable care and diligence the employee knew he suffered from a work-related injury." The court awarded benefits for 70% permanent partial disability to the body as a whole and temporary total disability benefits through February 3, 1989.

The employer insists the employee failed to give notice as required by T.C.A. § 50–6–201, which provides:

Every injured employee or his representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has not actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation which may have accrued under the provisions of the Workers' Compensation Law from the date of the accident to the giving of such notice, unless it can be shown that the employer had actual knowledge of the accident; and no compensation shall be payable under the provisions of this chapter unless such written notice is given the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give such notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

The employer also insists the employee's suit is barred by T.C.A. § 50–6–203, which provides:

> The right to compensation under the Workers' Compensation Law shall be forever barred, unless within one (1) year after the accident resulting in injury or death occurred the notice required by § 50–6–202 is given the employer and a claim for compensation under the provisions of this chapter is filed with the tribunal having jurisdiction to hear and determine the matter; provided that, if within said one (1) year period voluntary payments of compensation are paid to the injured person or his dependents, an action to recover any unpaid portion of the compensation, payable under this chapter, may be instituted within one (1) year from the time the employer shall cease making such payments, except in those cases provided for by § 50–6–230.

The issue presented for resolution is whether, on *de novo* review, the evidence preponderates against the trial court's findings. T.C.A. § 50–6–225(e).

### Notice

■ The facts in this case are similar to those in *Pentecost v. Anchor Wire Corporation*, 695 S.W.2d 183 (Tenn.1985), in which the Court, in outlining the legal standard to be applied in cases in which the employee did not notify the employer of the extent of his injury within the statutory time, wrote:

> Under the terms of T.C.A., § 50–6–201, the 30–day notice period is tolled by "reasonable excuse for failure to give such notice." An employee's reasonable lack of knowledge of the nature and seriousness of his injury has been held to excuse his failure to give notice within the 30–day period (citations omitted). Likewise, an employee's lack of knowledge that his injury is work-related, if reasonable under the circumstances, must also excuse his failure to give notice within 30 days that he is claiming a work-related injury (citation omitted). It is enough that the employee notified the employer of the facts concerning his injury of which he is aware or reasonably should be aware.

183 S.W.2d at 185.

The Court further stated in *Pentecost:*

> It is clear from the preceding authority that when an employee has failed to give notice within 30 days of the occurrence of an injury, the focus of the trial court's inquiry should be the reasonableness of the employee's failure to do so. As applied to the facts of this case, the trial court was required to determine whether or not plaintiff's failure to recognize the work-related character of her injury was reasonable.

*Id.*

The evidence supports the trial court's finding that the employee's failure to give notice within thirty days of the injury was reasonable. The employee's symptoms after the accident did not indicate the severity of the injury. The only apparent injury sustained from the fall was superficial bruises. There was no sudden onset of pain, but rather a gradual progression of symptoms over a period of several months. Even after he sought medical advice, his physicians did not discuss with him the origin of his condition. He was not advised that the condition was or could have been caused by trauma until the post-operative conversation with Dr. Carlson on October 6, 1987.

Another condition which justifies the delay in asserting a compensable claim is the employee's limited understanding of his condition and his rights and duties under the workers' compensation law. As the trial court noted, plaintiff in this case was "not an average employee," he cannot read or write, he has a very low IQ, and he has much difficulty in keeping straight sequences of events and remembering names and dates. Until his conversation with his physician on October 6, 1987, the employee did not understand that he had a work-related, compensable injury.

The evidence does not preponderate against the trial court's finding that the employee's failure to give notice was reasonable, and, therefore, excused.

### Statute of Limitations

■ The evidence regarding the nature of the injury and the employee's failure to appreciate his condition supports the trial court's finding that the statute of limitations did not begin to run until October 6, 1987. The proof in this case shows that suit was filed within one year from the time that, by the exercise of reasonable care and diligence, it was apparent to the employee that he had sustained a compensable injury.

Though the statute of limitations was not an issue in *Pentecost,* the Court in that case compared the failure to give notice to the failure to file suit within one year. The Court stated:

> In the analogous situation involving the failure to file a workers' compensation claim within one year of the occurrence of the injury, the limitations period provided by T.C.A., § 50–6–203, it is well-settled that "the running of the statute of limitations is suspended until by reasonable care and diligence it is discoverable and apparent that an injury compensable under the workmen's compensation laws has been sustained." (Citations omitted.)

*Id.*

The rule is set forth in *Imperial Shirt Corporation v. Jenkins,* 217 Tenn. 602, 399 S.W.2d 757 (1966), in which the Court found that the "statute here didn't begin to run until the employee discovered that this permanent injury was connected with the accident which had happened subsequent thereto." *Id.* 399 S.W.2d at 760. As in the instant case, the employee in *Imperial Shirt* was "an uneducated, ignorant type of person and he really had no knowledge about Workmen's Compensation or anything of the kind." *Id.* at 760. The Court affirmed the *Imperial Shirt* rule in *Norton Company v. Coffin,* 553 S.W.2d 751 (Tenn.1977), with the following: "[T]he running of the statute of limitations is suspended until by reasonable care and diligence it is discoverable and apparent that an injury compensable under the workmen's compensation laws has been sustained." *Id.* at 752.

The facts of the instant case are similar to the facts in *Osborne v. Burlington Indiana, Inc., Klopman Div.,* 672 S.W.2d 757 (Tenn.1984), in which the employee suffered a continuing or gradual injury that originated almost three years before he was advised that he had a permanent back injury. The Court held that the employee had no reason to know that his injury was compensable until the physician diagnosed him as having a ruptured disc and that until such time the statute of limitations did not commence to run.

As held in these cases, the running of the statute of limitations was suspended until by reasonable care and diligence the compensable injury became apparent.

The evidence does not preponderate against the trial court's finding that the statute of limitations commenced to run on October 6, 1987, and that, therefore, the suit filed on December 22, 1987, was not barred.

### Causation

■ The employer's final assignment of error is that the expert testimony was too speculative to support the trial court's finding of a causal relationship between plaintiff's work-related accident and his disability. Review of the record shows that the medical evidence does not preponderate against the trial court's finding of causation.

The law with regard to the issue of causation is summarized in *Tindall v. Waring Park Association,* 725 S.W.2d 935 (Tenn. 1987), as follows:

> This Court has consistently held that causation and permanency of a work-related injury must be shown in most cases by expert medical evidence (citations omitted). Furthermore, "by 'causal connection' is meant not proximate cause as used in the law on negligence, but cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee while doing his work" (citations omitted). Although absolute certainty is not required for proof of causation, (citation omitted),

medical proof that the injury was caused in the course of the employee's work must not be speculative or so uncertain regarding the cause of the injury that attributing it to the plaintiff's employment would be an arbitrary determination or a mere possibility (citations omitted). "If, upon undisputed proof, it is conjectural whether disability resulted from a cause operating within petitioner's employment, or a cause operating without employment, there can be no award" (citation omitted). If, however equivocal medical evidence combined with other evidence supports a finding of causation, such an inference may nevertheless be drawn by the trial court under the case law (citations omitted).

*Id.* at 937.

The award of benefits was affirmed in *P & L Construction Company, Inc. v. Lankford,* 559 S.W.2d 793 (Tenn.1978), with the following statement:

In a workman's compensation case, a trial judge may properly predicate an award on medical testimony to the effect that a given incident "could be" the cause of the plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury (citations omitted).

*Id.* at 794.

In the instant case, Dr. Carlson, when asked his opinion regarding the cause of the employee's herniated nucleus pulposus, testified that "herniated discs occur as a result of trauma." In response to a hypothetical question, Dr. Carlson agreed that "a person who has experienced a fall and had no previous known back injuries, who was engaged in the kind of work Mr. Livingston was involved in, who begin to experience more and more pain, could have had a work-related injury."

Dr. Purvis, who performed the second operation, testified, "[B]y his history, it would appear that the injury that he had in October of 1986 that he described was the causal injury for his symptoms." When asked whether in his opinion the employ-

ee's back injury was causally related to his work, the physician responded:

As I stated before, I thought the injury he described certainly could produce the kind of injury that he had, that is a ruptured disc, and produce the kind of symptoms that he had. And that, of course, would be as a part of his work. I mean that occurred at a time that he was working.

Dr. Purvis agreed on cross-examination that in his opinion the fall in the truck was the cause of the original injury, that the fall was the identifiable trauma in this case. He stated, "My reconstruction of what I was told would be that he had a specific injury and that this was what set these facts and symptoms in motion and the starting of the whole thing."

The expert evidence does not preponderate against the trial court's finding of causation.

The judgment of the trial court is affirmed. Costs are taxed to the appellant.

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.