IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

April 21, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| SHEILA I. LAWSON | ) | FOR PUBLICATION |
| | ) | |
| | ) | FILED: APRIL 21, 1997 |
| Plaintiff-Appellee | ) | |
| | ) | HAMBLEN COUNTY |
| v. | ) | |
| | ) | HON. W.L. JENKINS, |
| LEAR SEATING CORPORATION | ) | JUDGE |
| | ) | |
| Defendant-Appellant | ) | NO. 03-S-01-9509-CV-00105 |

For Appellant: _____ For Appellee:

ROBERT D. VAN DE VUURST                ROBERT C. EDWARDS
STEVEN H. TRENT                        Knoxville, TN
Johnson City, TN

OPINION

DECISION OF THE PANEL REVERSED;          BIRCH, C.J.
JUDGMENT OF THE TRIAL COURT AFFIRMED.

In this case, the Special Workers' Compensation Appeals Panel concluded that Sheila I. Lawson, the employee, failed to commence her action for benefits within one year of the accident causing injury. After a thorough review of the record, we find that Lawson commenced her action within the applicable period of limitations.

I

For more than twenty years, Sheila Lawson was employed by Lear Seating Corporation as a production line worker. In the late 1980's, she began to experience pain and numbness in her hands and sought medical treatment from her family physician, John H. Kinser, M.D. Kinser told her that her problems were related to her job and recommended that she be rotated to a different job in the plant.

After her initial visit to Kinser, Lawson notified her supervisor of her problem with her hands and requested a transfer to a different machine. The supervisor granted her request, and Lawson's symptoms diminished for a time. However, over the next several years, the symptoms periodically recurred. During this time, Lawson transferred to several different machines in an effort to obtain relief. As she transferred from machine to machine, her symptoms would abate temporarily--only to recur.

Subsequently, she developed pain in her shoulders and arms because of her efforts to compensate for the pain in her

hands.  Kinser gave Lawson monthly injections to alleviate the pain in her shoulders and arms.

During this entire period, Lawson continued to work full-time and without restriction.  She did not file a workers' compensation claim with her employer, and Lear did not pay Kinser's bills.

On the morning of June 17, 1993, Lawson tried to pick up her coffee cup, but unable to grasp it, she dropped it.  After this incident, Lawson went to the company nurse and informed her that she could not work.  The nurse referred Lawson to the company doctor, who sent Lawson to E. Brantley Burns, Jr., M.D., a specialist in orthopaedic medicine.

Burns diagnosed carpal tunnel syndrome.  Lear placed Lawson on temporary disability.  She then underwent surgery on both wrists.  Following a recuperative period, she returned to work.  During this period, Lear paid Lawson workers' compensation benefits.

Burns determined that Lawson had a ten percent permanent partial impairment to each upper extremity.  In April 1994, Lawson filed this suit to recover permanent partial disability benefits.

II

Our review is <u>de novo</u> on the record, accompanied by a presumption that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(3).

As stated, the panel concluded that Lawson's claim was barred by the statute of limitations. We disagree. Repetitive stress injuries are "accidental" and do not constitute occupational diseases. <u>Brown Shoe Co. v. Reed</u>, 209 Tenn. 106, 350 S.W.2d 65, 69 (1961). Therefore, a suit to recover workers' compensation benefits for such an injury must be filed within one year of the "accident resulting in the injury." Tenn. Code Ann. § 50-6-203.

The identification of the "accident resulting in the injury" is problematic in the case of a repetitive stress injury such as Lawson's. With carpal tunnel syndrome and other repetitive stress injuries, the symptoms appear and worsen over an extended period of time.[1] As in Lawson's case, the symptoms may be episodic and may subside when the employee's job is altered. Thus, it is difficult, if at all possible, to determine when the "accident resulting in the injury" occurs. Such a determination is important because the statutory limitation period begins to run only after the occurrence of the "accident resulting in the injury."

---

[1]We distinguish this case from those situations where carpal tunnel syndrome develops as a result of an identifiable traumatic event.

In _Barker v. Home-Crest Corp._, 805 S.W.2d 373 (Tenn. 1991), the issue was which of two insurance carriers was obligated to pay benefits for a carpal tunnel injury. Writing for the Court, Justice Anderson held that because the employee suffered a new injury each day at work and since the cause of those injuries was constant, the accidental injury occurred on the date on which the employee "could no longer perform her work." _Id._ at 376. The date of the accident for purposes of ascertaining the commencement of the limitations period should be the same as the date of the accident for purposes of ascertaining which insurance company should pay benefits. We see no reason to distinguish between the two.

As Professor Larson notes:

> This repeated-trauma or cumulative trauma doctrine appears to have originated with the House of Lords decision in _Burrell & Sons, Ltd. v. Selvage_ [90 L.J. 1340 (H.L. 1921)], in which compensation was awarded for the disabling cumulative effect of a long series of cuts and scratches leading to infection and arthritis. . . .
>
> . . . .
>
> The practical problem of fixing a specific date for the accident has generally been handled by saying simply that the date of the accident is the date on which the disability manifests itself. Thus, in [_Ptak v. General Elec. Co._, 13 N.J. Super. 294, 80 A.2d 337 (1951)], the date of a gradually acquired sacroiliac strain was deemed to be the first moment the pain made it impossible to continue to work. . . .

6

1B Larson, <u>Workmen's Compensation Law</u> § 39.40 and § 39.50 (1987)(citing <u>Brown Shoe</u>, <u>supra</u>)(quoted with approval in <u>Barker</u>, <u>supra</u>).

Other jurisdictions that have addressed this issue have reached a similar conclusion. <u>See</u> <u>Berry v. Boeing Military Airplanes</u>, 20 Kan. App.2d 220, 885 P.2d 1261, 1268 (Kan. Ct. App. 1994)(the date of "occurrence" or date of "injury" relates back to the last date on which claimant worked); <u>Ramsey v. Weyerhaeuser</u>, 853 P.2d 774 (Okla. 1993)(date of "last trauma" is last day worked); <u>Brooks Drug, Inc. v. Workmen's Compensation Appeal Board (Parker)</u>, 161 Pa. Cmwlth. 81, 636 A.2d 246, 249 (1993)("Each day of work constituted a 'new' injury in that it further aggravated Claimant's condition . . . . The date of injury . . . is, therefore, the last day Claimant worked.").

In <u>Berry</u>, the Kansas Court of Appeals discussed at length the problems associated with fixing the date of the accident in carpal tunnel injury cases:

> In the instant matter, both the ALJ and the Board concluded that the last day of work should be deemed as the date of occurrence, at least insofar as the bilateral carpal tunnel condition is concerned. We affirm that decision. We carry that decision one step further and conclude that the last day of work should be the date from when disability is computed in all cases involving carpal tunnel syndrome . . . . If we were to adopt either the date on which the injury "manifests itself" or the date on which the injury is "diagnosed," we would set a potential trap for the individual who, despite pain and

7

> discomfort, continues to work long after his or her carpal tunnel is "diagnosed" or has "manifested itself." Those individuals would find their claims for compensation barred by the statute of limitations. It seems to us that we should adopt the rule that causes the least potential prejudice and upholds the spirit of our Workers Compensation Act. We believe use of the last day of work accomplishes both of those purposes.
>
> . . . .
>
> Because of the complexities of locating the date of injury in a carpal tunnel syndrome case, the process is simplified and made more certain by adopting a rule that in a carpal tunnel syndrome action, the date from which compensation flows is the last date worked by the claimant.

Berry, 885 P.2d at 1267-1268. We find the policy reasons set out by the Kansas court persuasive. Like the Kansas statute, our workers' compensation statute is remedial in nature. Tenn. Code Ann. § 50-6-116. As we stated in Betts v. Tom Wade Gin, 810 S.W.2d 140 (Tenn. 1991),

> this Court must interpret those statutes in a manner designed to protect workers and their families from the economic devastation that, in many instances, can follow on-the-job injuries. Furthermore, Tennessee's workers' compensation laws must be construed so as to ensure that injured employees are justly and appropriately reimbursed for debilitating injuries suffered in the course of service to the employer.

Id. at 142-143 (footnote omitted). Moreover, our holding today establishes a clear point at which the limitation period begins to

8

run.  See also <u>Central Motor Express, Inc. v. Burney</u>, 214 Tenn. 106, 377 S.W.2d 947, 951 (1964)(applying "last day worked" rule to find workers notice of injury to the employer timely.)

We find the issue raised in this case distinguishable from that raised in <u>Livingston v. Shelby Williams Ind., Inc.</u>, 811 S.W.2d 511 (Tenn. 1991).  In <u>Livingston</u>, the employee fell and hurt his back.  Initially, the employee did not think himself seriously injured, and the injurious effects of the fall were not manifested for several months.  In that case, the date of the accident causing injury for purposes of commencing the limitations period was the date of the fall.  However, the statute of limitations was suspended until by reasonable care and diligence it was discoverable and apparent that an injury had been sustained.  <u>Id.</u> at 515.  In <u>Livingston</u>, even though not immediately apparent, there was an identifiable event or accident after which the employee had an injury.  In the case of a repetitive stress injury, however, there is no identifiable event, incident, or moment before which the employee is not injured, but after which the employee is injured.  Thus, the "last day worked" rule that we announce today applies only to repetitive stress injuries, i.e., the unexpected or unusual injuries that result from the ordinary or usual strain or exertion of the employee's job. <u>Central Motor Express</u>, 377 S.W.2d at 950.

Carpal tunnel syndrome may develop as a result of a traumatic event, and in such situations, the statute of limitations would begin to run when by reasonable care and diligence the

9

compensable injury is discoverable and it is apparent that such injury is work-related.  <u>Livingston v. Shelby Williams Ind., Inc.</u>, 811 S.W.2d 511, 515 (Tenn. 1991).

As in <u>Barker</u>, the repetitive movements of Lawson's hands as she performed her job caused her injuries.  Each day Lawson worked contributed to her injury.  Because there is no one particular incident or event identifiable as an "accident resulting in the injury" and because Lawson suffered new trauma to her hands each day she worked, we hold that the date of the accidental injury is the date that Lawson was no longer able to work because of her injury.  The record establishes that June 17, 1993, was the first day that Lawson was unable to perform her job; therefore, the statute of limitations commenced at that time.  As Lawson filed this suit in April 1994, her claim is timely.

The judgment of the trial court is affirmed.  Costs of this appeal are taxed to Lear Seating Corporation, for which execution may issue if necessary, and Lawson's request for additional sanctions is denied.

_____
ADOLPHO A. BIRCH, JR., Chief Justice

CONCUR:

Drowota, Anderson, Reid, JJ.