IN THE COURT OF WORKERS' COMPENSATION CLAIMS
 AT COOKEVILLE

Sallie A. Maples, ) Docket No.: 2015-04-0039
 Employee, )
v. ) State File No.: 34179-2015
 )
Federal-Mogul Corp. )
 Employer, )
And ) Judge Robert Durham
 )
Travelers Insurance Co., )
 Insurance Carrier/TPA. )
 )

 EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

 THIS CAUSE came before the undersigned Workers' Compensation Judge upon
the Request for Expedited Hearing (REH) filed by Sallie A. Maples, the Employee, on
October 15, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to
determine if the Employer, Federal-Mogul, is obligated to provide medical and temporary
disability benefits.

 The dispositive issue is whether Ms. Maples sustained an injury that primarily
arose out of and in the course and scope of her employment with Federal-Mogul.
Ancillary issues include: (1) the date of Ms. Maples' injury and whether this Court has
jurisdiction to render a decision on her claim; (2) whether Ms. Maples provided timely
notice of her alleged injury, and if the statute of limitations expired regarding her claim;
(3) whether Ms. Maples is entitled to Dr. Weikert as her authorized physician; (4)
whether Ms. Maples is entitled to temporary disability benefits; and, (5) whether Ms.
Maples is entitled to psychological or psychiatric treatment as a result of her alleged
physical injury. 1' 2

1
 Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.
2
 Ms. Maples filed a "Supplemental Petition for Benefits" with regard to a claim for mental injuries arising out of
her August I, 2014 injury. The Court consolidated both actions pursuant to Tennessee Compilation Rules and
Regulations 0800-02-21-.12(3) (2015).

 1
 The Court finds the evidence submitted by Ms. Maples is sufficient to establish
she is likely to prevail at a hearing on the merits on the issues of causation, notice, and
statute of limitations. However, she did not provide enough evidence to establish she
would prevail at a hearing on the merits with regard to naming Dr. Weikert as her treating
physician, receipt of temporary disability benefits, or treatment for an alleged mental
InJUry.

 History of Claii~

 Ms. Maples is a fifty-one-year-old resident of DeKalb County, Tennessee, who
worked as a press operator for Federal-Mogul for twenty-eight years. (T.R. 1 at 1.) Ms.
Maples testified that for eleven years, she ran an automatic press; however, it still
required her to run parts over a grinder to remove excess flashing. The job required her
to press down on the part with both thumbs and move it in a semi-circular motion around
the grinding wheel. She had to repeat this process throughout her workday.

 In 2013, the automatic press position moved to Mexico, and Ms. Maples began
working on a manual press. In addition to grinding off excess flashing, she now had to
load the press manually by pushing the parts into the press. She then would remove the
parts by putting the tips of her index and middle fingers in holes in the part and rolling or
dragging it approximately four feet to the next station. She testified that for the twenty-
eight years she worked at Federal-Mogul, her job consisted entirely of "hand-intensive
work."

 On May 27, 2010, Ms. Maples treated with Timothy Tobitt, DrPH, FNP. (Ex. 5 at
1.) Ms. Maples complained of anxiety resulting from the pregnancy of her daughter.
N.P. Tobitt noted his evaluation lasted almost an hour and a half due to the "hysterical
nature of patient and inconsolability." (Ex. 5 at 2.) In addition to anxiety, Ms. Maples
also complained of bilateral hand pain, "due to labor at work and is needing to have
surgery." (Ex. 5 at 1.) At the hearing, Ms. Maples testified no one told her she needed
surgery, and this must have been a "self-diagnosis." Ms. Maples described her pain as
"worsening, continuous, increased, burning pain, sharp pain." !d. She stated she had
experienced pain with squeezing or holding any objects for several years, and it was
usually associated with work. !d. She also complained of joint stiffness and swelling, as
well as tingling in her fingers and/or toes. !d. N.P. Tobitt prescribed medication for
anxiety, but did not diagnose or treat Ms. Maples for her hand pain. (Ex. 5 at 2.)

 On August 5, 2010, Ms. Maples returned to N.P. Tobitt complaining of "joint
pain, swelling, stiffness, redness with right great toe," which was usually associated with
work. (Ex. 5 at 3.) On examination, N.P. Tobitt noted joint inflammation and
enlargement with Heberdeen's nodes in the fingers as well as redness and inflammation
in the fingers and toes. !d. N.P. Tobitt diagnosed her with hand osteoarthritis and

 2
foot/toe pain. /d. He prescribed Indocin, but withheld corticosteroids due to "previous
patient complications." (Ex. 5 at 4.)

 In July 2012, Ms. Maples applied for FMLA leave from Federal-Mogul. (Ex. 11
at 2.) Natalie Gilley, N.P., was the health care provider who completed the form. 3 N.P.
Gilley opined Ms. Maples could not do any of her job duties because of severe
osteoarthritis in her hands, and stated she needed time off to evaluate the effectiveness of
medication. /d. at 3. N.P. Gilley estimated Ms. Maples would be off work from July 19,
2012, until August 6, 2012. /d. Federal-Mogul granted Ms. Maples' FMLA leave on
July 19, 2012.

 At the hearing, Ms. Maples testified that, while she remembered seeing N .P.
Gilley for a cold and telling her about her hands, she did not recall requesting FMLA
leave. She further testified she did not take any time off work in 20 12 because of her
hands. Pearlie Hillson, Human Resource representative for Federal-Mogul, testified that
while Federal-Mogul granted FMLA leave to Ms. Maples in July 2012, she could not find
any evidence Ms. Maples actually took off work during that time.

 On September 21, 2013, Ms. Maples saw N.P. Tobitt for a wellness exam. (Ex. 5
at 5.) N.P. Tobitt noted multiple arthritic joints and contracture deformities in Ms.
Maples' fingers. /d. She returned a week later complaining of fatigue and hand/finger
pain or problems. (Ex. 5 at 7.) She complained of severe joint pain in both hands, and
stated her job consisted of repetitive work with both hands. /d. N.P. Tobitt reviewed a
bone density scan and stated he would "obtain rheumatology records." (Ex. 5 at 8.) He
prescribed Celebrex and told her he would refer her to pain management if she felt she
needed medication to control her pain. /d.

 On June 30, 2014, Ms. Maples returned to N.P. Tobitt complaining of joint pain,
swelling and stiffness at multiple sites, including her fingers, hands, feet, toes and ankles.
(Ex. 5 at 9.) N.P. Tobitt diagnosed her with rheumatoid arthritis as well as osteoarthritis
at multiple sites. (Ex. 5 at 10.) He stated he would ""obtain release from Dr. Razzaq,
Rheumatology" as well as refer her to a rheumatologist. /d. Ms. Maples followed up
with N.P. Tobitt on August 1, 2014. (Ex. 5 at 11.) He continued to diagnose her with
rheumatoid arthritis and osteoarthritis and ordered an EMG/NCS to rule out neuropathy.
(Ex. 5 at 11-12.) The test revealed no evidence of neuropathy. (Ex. 5 at 21.) X-rays
revealed moderate to severe degenerative joint disease (DJD) in the first carpometacarpal
joint and DIP joints in the second and third fingers on the left hand, and moderate to
severe DJD in the first carpometacarpal joint and IP joints of the second finger in the
right hand. (Ex. 5 at 22-24.)

3
 Neither party provided N.P. Gilley's records.

 3
 Ms. Maples testified that on August 1, 2014, she told her supervisor, Mr. Gwen, 4
she could no longer work because of her hands. She testified Mr. Gwen asked if her
employment caused her hand problems, and she told him she did not know. August 1,
2014, was the last day Ms. Maples worked at Federal-Mogul.

 On August 13, Ms. Maples saw rheumatologist, Dr. Robert LaGrone. The note
indicates Ms. Maples asked about "workers' comp paperwork," but it was explained to
her that Dr. LaGrone did not see workers' compensation patients. (Ex. 7 at 1.) At the
hearing, Ms. Maples disputed this statement, testifying that Dr. LaGrone's staff
repeatedly asked her if it was workers' compensation, and she told them it was not.

 Dr. LaGrone diagnosed Ms. Maples with "significant hereditary nodal OA." (Ex.
7 at 2.) He noted complaints of pain in her thumbs and all her DIP joints as well as her
knees. !d. Dr. LaGrone opined Ms. Maples, "should be having the same hand and knee
trouble whether she was working or not. Her job is not responsible for her condition,
though I agree it would be more difficult doing anything with repetitive hand use." !d.
He provided her with steroids and pain medication. !d.

 On August 14, 2014, N.P. Tobitt referred Ms. Maples to Dr. Novak, a hand
specialist, and placed her on physical restrictions. (Ex. 5 at 13.) Ms. Maples saw Dr.
Novak on August 25. (Ex. 6 at 1.) Dr. Novak noted she attributed her pain/problems in
her thumbs to "pushing with thumbs for 11 years" in a repetitive manufacturing job. !d.
However, on the Medical History form completed by Ms. Maples, she marked "no" when
asked if her problems were work-related. (Ex. 6 at 4.) On examination, Dr. Novak
noted advanced bilateral DJD in both thumbs as well as advanced osteoarthritis with joint
deformity in bilateral index/long fingers. !d. Dr. Novak discussed surgery on both
thumbs, but recommended conservative treatment, given Ms. Maples' young age. (Ex. 6
at 3.)

 On August 22, 2014, Federal-Mogul again granted Ms. Maples FMLA leave from
August 18 to September 12 due to her bilateral hand pain with numbness. On September
10, 2014, N.P. Tobitt took Ms. Maples off work until she underwent "surgical
intervention." (Ex. 5 at 14.) On September 22, Ms. Maples returned to Dr. Novak, who
injected both thumbs with steroids. (Ex. 6 at 6.) Ms. Maples testified she later tried to
return to Dr. Novak, but he declined to see her.

 On November 3, Dr. Douglas Weikert, orthopedist, evaluated Ms. Maples at the
request of N.P. Tobitt. (Ex. 8 at 1.) Ms. Maples testified Dr. Weikert spent forty-five
minutes to an hour with her and solicited a detailed explanation of the physical aspects of
her job. In his record, Dr. Weikert noted Ms. Maples worked in a "very heavy-handed
job" for almost thirty years, and went on to describe the physical aspects of her job duties

4
 Ms. Maples did not know Mr. Gwen's first name.

 4
at Federal-Mogul. !d. On examination, he observed she had well-developed
Heberdeen's nodes at both index fingers, and basilar thumb deformities bilaterally to an
equal degree. !d. Dr. Weikert diagnosed her with "advanced bilateral basilar thumb
arthritis and bilateral index finger osteoarthritis." !d. Dr. Weikert further opined that:

 [i]t is clear to me that given her job description and her 29 years doing this
 particular job, that the job itself is the primary activity responsible for the
 development of her arthritis. She has had no acute traumatic events and has
 a negative family history of osteoporosis presenting at a young age. Again,
 her arthritis is symmetric in presentation and has correlated to the second
 decade of doing this particular time [sic] at work in terms of its progression.

!d.

 Ms. Maples testified that on November 24, 2014, she notified Federal-Mogul she
wished to file a workers' compensation claim. She testified she immediately went to
Federal-Mogul once she received Dr. Weikert's written report in the mail opining that her
arthritic condition was work-related. ·

 On December 4, Ms. Maples gave a recorded statement to Schuyler Lampley,
adjuster for Travelers Insurance. (Ex. 10.) The following is an excerpt:

 Q: Okay. And so did, did you tell your supervisor that you felt like this
 was something caused by your work?

 A: I didn't know, I didn't know. At the time I didn't know what it,
 what it was.

 Q: Okay. So, so you just told your supervisor that your hands were
 hurting?

 A: Yes.

 Q: Okay. All right. And so when did you start to think that this could
 be something caused by your job?

 A: I really didn't know, I really didn't know. It was basically when my
 doctors asked about my job and described what ... I described to
 him what I was doing and he d . . . he gave me his medical opinion
 and that was on November the 3rd.

(Ex. 10 at 9-10.) On January 15, 2015, Federal-Mogul denied Ms. Maples' claim on the
grounds that the statute of limitations had expired. (Ex. 3.)

 5
 On August 5, 2015, Dr. Greg Kyser, psychiatrist, evaluated Ms. Maples at the
request of her counsel. (Ex. 9.) He diagnosed her with mental distress "directly related
to her physical pain and impairment, along with subsequent loss of functioning,
diminished social relationships and concerns regarding finances and employability." (Ex.
9 at 5.) He recommended anti-anxiety medication and gave her a ten percent impairment
rating, finding her to be at MMI as of the date of his evaluation. (Ex. 9 at 6.)

 At the hearing, the Court observed Ms. Maples' hands. She had obvious nodes on
her thumbs and fingers as well as deformities in her index and middle fingers.
Furthermore, she testified she did not claim her arthritis as a work-related injury because
she did not know until her evaluation by Dr. Weikert that her arthritis was caused by her
employment with Federal-Mogul.

 Ms. Maples filed a Petition for Benefit Determination (PBD) seeking medical
benefits. The parties did not resolve the disputed issues through mediation, and the
Mediating Specialist filed a Dispute Certification Notice. Ms. Maples filed an REH, and
the Court heard the matter on December 15, 2015. At the Expedited Hearing, Ms.
Maples asserted she sustained a job-related injury and provided notice when she knew
her arthritic condition was work-related. Therefore, she is entitled to workers'
compensation benefits, including temporary disability benefits and medical treatment.
Federal-Mogul countered that Ms. Maples failed to establish a date of injury subsequent
to July 1, 2014, and thus the Court did not have jurisdiction over her claim. Federal-
Mogul further argued Ms. Maples failed to provide timely notice of her alleged work-
related injury and that the statute of limitations had expired. As such, Federal-Mogul
argued the Court should deny her claim.

 Findings of Fact and Conclusions of Law

 The Workers' Compensation Law shall not be remedially or liberally construed in
favor of either party but shall be construed fairly, impartially and in accordance with
basic principles of statutory construction favoring neither the employee nor
employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers'
compensation claim has the burden of proof on all essential elements of a claim. Tindall
v. Waring Park Ass'n, 725 S.W.2d 935, 937 (Tenn. 1987); 5 Scott v. Integrity Staffing
Solutions, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn.
Workers' Comp. App. Bd. Aug. 18, 2015).

5
 The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme
Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-
July l, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation
Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory
amendments." McCord v. Advantage Human Resourcing, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd.
LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

 6
 An employee need not prove every element of his or her claim by a preponderance
of the evidence in order to obtain relief at an expedited hearing. McCord v. Advantage
Human Resourcing, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-
8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an
employee has the burden to come forward with sufficient evidence from which the trial
court can determine that the employee is likely to prevail at a hearing on the merits. !d.
This lesser evidentiary standard "does not relieve an employee of the burden of
producing evidence of an injury by accident that arose primarily out of and in the course
and scope of employment at an expedited hearing, but allows some relief to be granted if
that evidence does not rise to the level of a 'preponderance of the evidence."' Buchanan
v. Car/ex Glass Co., No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6
(Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

 Date of Injury and Jurisdiction

 Tennessee Code Annotated section 50-6-102(14)(A) (2015) provides that an
accidental injury must be "identifiable by time and place of occurrence." "In the case of
a gradually occurring injury, the last-day-worked rule is used to help identify a date on
which the injury occurred." Bldg. Materials Corp. v. Britt, 211 S.W.3d 706, 711 (Tenn.
2007); see also Lawson v. Lear Seating Corp., 944 S.W.2d 340, 341-42 (Tenn. 1997);
Barker v. Home-Crest Corp., 805 S.W.2d 373, 375 (Tenn. 1991). "The last day worked
is determined by reference to the date on which the employee could no longer perform
his or her work." Mathenia v. Milan Seating Sys., 254 S.W.3d 313, 320 (Tenn. 2007).
The rationale for the rule is that with repetitive trauma injuries, each day worked results
in a new injury. Britt, supra, at 712.

 Admittedly, the Supreme Court in Britt considered the "last day worked" rule to
be consistent with the requirement that it liberally construe Workers' Compensation Law.
!d. at 713. However, the Court does not find the rule to be inconsistent with the standard
requiring it to construe the law in a manner "not favoring either the employee or the
employer." Tenn. Code Ann. § 50-6-116 (2015). Tennessee Code Annotated section
50-6-102(14) (2014) specifically includes "cumulative trauma injuries" within the
definition of "Injury" and states that an injury may be "accidental" if caused by a "set of
incidents." The Court finds that, in most cases involving cumulative trauma, it would be
exceedingly difficult for an employee to establish a date of injury "identifiable by time
and place of occurrence" if the "last day worked" rule did not exist, and would effec~ively
deprive them of a remedy contemplated by Workers' Compensation Law. Tenn. Code
Ann.§ 50-6-102(14)(A) (2015); accord Tenn. Code Ann.§ 50-6-201 (2014) (notice is not
required until an employee is rendered unable to work and reasonably should know her
condition is work-related).

 Ms. Maples testified that the last day she worked for Federal-Mogul was August 1,

 7
2014. While she did request FMLA leave in 2012, Ms. Maples testified that, to her
knowledge, she never actually took any time off work. Federal-Mogul produced no
evidence to the contrary. Therefore, the Court finds Ms. Maples' date of injury to be
August 1, 2014, and this Court has jurisdiction pursuant to Tennessee Code Annotated
section 50-6-237 (2015).

 Causation

 Tennessee Code Annotated section 50-6-102(14) (2015) defines "injury" as an
"injury by accident, a mental injury, occupational disease including diseases of the heart,
lung and hypertension, or cumulative trauma conditions including hearing loss, carpal
tunnel syndrome or any other repetitive motion conditions, arising primarily out of and in
the course and scope of employment[.]"

 The undisputed medical proof establishes that Ms. Maples suffers from moderate
to severe arthritis in her hands, primarily in her thumbs and the first two fingers of each
hand. (Ex. 7, 8.) The only two physicians to address causation are Dr. LaGrone and Dr.
Weikert. !d. Dr. LaGrone opined, "Her job is not responsible for her condition." (Ex. 7
at 2.) Dr. Weikert stated, "[T]hat the job itself is the primary activity responsible for the
development of her arthritis." Neither Dr. LaGrone nor Dr. Weikert was an authorized
physician, and thus the presumption of correctness provided in Tennessee Code
Annotated section 50-6-102(14)(E) (2015) does not attach to either opinion.

 "When medical testimony differs, it is within the discretion of the trial judge to
determine which expert testimony to accept." Story v. Legion Ins. Co., 3 S.W.3d 450,
455 (Tenn. 1999). "In doing so, he is allowed, among other things, to consider the
qualifications of the experts, the circumstances of their examination, the information
available to them, and the evaluation of the importance of that information by other
experts." Orman v. Williams Sonoma, 803 S.W.2d 672, 676 (Tenn. 1991). Dr. LaGrone
is a rheumatologist, specializing in arthritis. (Ex. 7.) Dr. Weikert is an orthopedic
surgeon. (Ex. 8.) Thus, both physicians are qualified to address causation with regard to
Ms. Maples' condition.

 However, Ms. Maples testified Dr. Weikert spent almost an hour with her during
her evaluation and elicited detailed information regarding the physical demands of her
job. Dr. Weikert's records corroborate Ms. Maples' testimony in that they provide a
description of her specific duties, and describe her job as a "very heavy-handed job using
both hands equally." (Ex. 8 at 1.) Dr. LaGrone's record does not contain any indication
he asked Ms. Maples to describe her job duties. (Ex. 7.)

 Dr. Weikert determined that Ms. Maples' hand-intensive job duties, when
combined with the length of time she had worked for Federal-Mogul and the symmetry of
her arthritis, all pointed to work being the "primary activity" responsible for her arthritis.

 8
(Ex. 8 at 2.) Given the record before it, the Court gives more weight to Dr. Weikert's
opinion, and finds Ms. Maples is likely to prevail on the issue of causation at a hearing on
the merits. Buchanan, supra, at 6.

 Notice

 Tennessee Code Annotated section 50-6-201(b) (2015) provides that:

 In those cases where the injuries occur as the result of gradual or
 cumulative events or trauma, then the injured employee or the injured
 employee's representative shall provide notice of the injury within thirty
 days after the employee:

 (1) Knows or reasonably should know that the employee has
 suffered a work..:related injury that has resulted in a permanent impairment; .
 or
 (2) Is rendered unable to continue to perform the employee's
 normal work activities as a result of the work-related injury and the
 employee knows or reasonably should know that the injury was caused by
 work-related activities.

 In this case, the Court determines the date Ms. Maples was unable to continue her
normal work activities was August 1, 2014. However, the Court further finds she did not
know or reasonably should have known her work-related activities caused her injury until
November 3, 2014, when Dr. Weikert evaluated her.

 There is nothing in the record to establish Ms. Maples knew or reasonably should
have known her condition was work-related prior to November 3, 2014. Ms. Maples
testified she did not know before then. Nothing in N.P. Tobitt's records indicate he
advised her that her arthritis causally related to her employment. (Ex. 5.) Dr. Novak did
not address causation in his report, and in the history form completed by Ms. Maples, she
stated her condition was not work-related. (Ex. 6 at 3.) Ms. Maples testified that on
August 1, 2014, when she told her supervisor, Mr. Gwen, she could no longer perform
her job because of her hands, he asked if it was work-related, and she told him she did not
know. On August 13, 2014, Dr. LaGrone expressly advised that her arthritis had nothing
to do with her job. (Ex. 7 at 2.) Finally, when Ms. Maples gave a recorded statement to
the adjuster for Federal-Mogul's insurer, she stated it was only after Dr. Weikert's
evaluation on November 3, 2014, that she became aware her arthritis was causally related
to her employment. (Ex. 10 at 9-1 0.)

 Ms. Maples clearly knew she suffered from arthritis several years before she gave
notice of a work-related injury to Federal-Mogul. She also clearly knew for several years
that her job duties made her pain worse. However, she did not know, nor should she have

 9
known, her employment primarily caused her arthritis until November 3, 2014, after her
evaluation by Dr. Weikert. Ms. Maples testified she provided notice to Federal-Mogul on
November 24, 2014, well within the thirty days mandated by Tennessee Code Annotated
section 50-6-201(b) (2015). Thus, the Court finds Ms. Maples gave adequate notice of
her work-related injury to Federal-Mogul.

 Statute ofLimitations

 Tennessee Code Annotated section 50-6-203 (20 15) provides that if an employer
has not paid any benefits, an employee must file a PBD within one year after the accident
resulting in injury. As stated above, the Court determines the date of Ms. Maples' injury
to be August 1, 2014. Ms. Maples filed a PBD on May 5, 2015, well within one year of
her injury.

 In addition, the statute of limitations does not begin to run until the employee,
through reasonable care and diligence, discovers the compensable injury and it is
apparent that such injury is work-related. Lawson v. Lear Seating Corp., 944 S.W.2d
340,342 (Tenn. 1997);Livingston v. Shelby Williams Ind., Inc., 811 S.W.2d 511,515
(Tenn. 1991 ). As stated earlier, Ms. Maples did not know or should have reasonably
known her employment primarily caused her arthritis until Dr. Weikert evaluated her on
November 3, 2014, which would still be well within one year of May 5, 2015, when Ms.
Maples filed the PBD. As a result, the Court finds the statute of limitations does not bar
Ms. Maples' claim for workers' compensation benefits.

 Authorized Physician

 Ms. Maples requests that the Court name Dr. Weikert as her authorized treating
physician. Tennessee Code Annotated section 50-6-201(a) (2015) provides that an
employee shall not be entitled to physician's fees or accrued benefits incurred prior to
providing notice to the employer. Dr. Weikert examined Ms. Maples on November 3,
2014, several weeks prior to providing notice. Therefore, Federal-Mogul would not be
responsible for any expenses incurred for that evaluation.

 Pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2015), an
employee shall accept medical services from the employer by selecting a physician from
a panel of three doctors provided by the employer. If an employer fails to provide a panel
upon receipt of notice, an employee may then be justified in seeking treatment on her
own. "An employer who denies all liability for an accident and injury is in no position to
insist upon the statutory provisions respecting the choosing of physicians." CNA Ins. Co.
v. Transou, 614 S.W.2d 335, 337-38 (Tenn. 1981) (citing Paristyle Beauty Salon, Inc. v.
Chandler, 341 S.W.2d 731 (1960)).

 However, in this instance, Ms. Maples testified she has not sought medical

 10
treatment with Dr. Weikert for her work-related arthritis since Federal-Mogul denied her
claim on January 15, 2015. As a result, the Court cannot require Federal-Mogul to
authorize Dr. Weikert as Ms. Maples' treating physician. However, Federal-Mogul must
provide Ms. Maples with a panel of physicians in accordance with Tennessee Code
Annotated section 50-6-204(a)(3)(A)(i) (2015) from which she may select an authorized
treating physician for her work-related injury.

 Psychiatric Care

 Ms. Maples also seeks psychiatric treatment pursuant to Dr. Kyser's report. (Ex.
9.) Tennessee Code Annotated section 50-6-204(h) (2015) provides that psychiatric or
psychological care is limited to that ordered upon the referral of authorized physicians.
Ms. Maples' attorney referred her to Dr. Kyser. (Ex. 9 at 1.) Therefore, the Court
reserves ruling on this issue until an authorized physician has evaluated Ms. Maples.

 Temporary Disability Benefits

 Ms. Maples also seeks temporary total disability benefits based on the
recommendation of N.P. Tobitt that she not work until she has undergone surgical
intervention. (Ex. 5 at 14.) The Court reserves ruling on this issue until an authorized
physician has evaluated Ms. Maples.

 IT IS, THEREFORE, ORDERED as follows:

 1. Federal-Mogul shall provide a panel of physicians in accordance with Workers'
 Compensation Law for the treatment of Ms. Maples' bilateral hand arthritis
 primarily arising out of and in the course and scope of her employment with
 Federal-Mogul.

 2. Issues regarding temporary disability benefits and psychiatric care are deferred
 until an authorized physician has evaluated Ms. Maples.

 3. This matter is set for Initial Hearing on February 8, 2016, at 10:00 a.m. C.T.

ENTERED THIS THE 4th DAY OF JANUARY, 2016.

 ~ Robert V. Durham, Judge
 Court of Workers' Compensation Claims

 11
 Initial Hearing:

 An Initial Hearing has been set with Judge Robert Durham, Court of
 Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-
 689-9049 to participate in the Initial Hearing.

 Please Note: You must call in on the scheduled date/time to participate.
 Failure to call in may result in a determination of the issues without your further
 participatioQ. All conferences are set using Central Time (CT).

Right to Appeal:

 Tennessee Law allows any party who disagrees with this Expedited Hearing Order
 to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of
 Appeal, you must:

 1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

 2. File the completed form with the Court Clerk within seven business days of the
 date the Workers' Compensation Judge entered the Expedited Hearing Order.

 3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

 4. The appealing party is responsible for payment of a filing fee in the amount of
 $75.00. Within ten calendar days after the filing of a notice of appeal, payment
 must be received by check, money order, or credit card payment. Payments can be
 made in person at any Bureau office or by United States mail, hand-delivery, or
 other delivery service. In the alternative, the appealing party may file an Affidavit
 of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing
 fee. The Affidavit of Indigency may be filed contemporaneously with the Notice
 of Appeal or must be filed within ten calendar days thereafter. The Appeals Board
 will consider the Affidavit of Indigency and issue an Order granting or denying
 the request for a waiver of the filing fee as soon thereafter as is
 practicable. Failure to timely pay the filing fee or file the Affidavit of
 Indigency in accordance with this section shall result in dismissal of the
 appeal.

 5. The parties, having the responsibility of ensuring a complete record on appeal,
 may request, from the Court Clerk, the audio recording of the hearing for the
 purpose of having a transcript prepared by a licensed court reporter and filing it
 with the Court Clerk within ten calendar days of the filing of the Expedited

 12
 Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of
 the evidence within ten calendar days of the filing of the Expedited Hearing
 Notice of Appeal. The statement of the evidence must convey a complete and
 accurate account of what transpired in the Court of Workers' Compensation
 Claims and must be approved by the workers' compensation judge before the
 record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory
 appeal, the appellant shall file such position statement with the Court Clerk within
 five business days of the expiration of the time to file a transcript or statement of
 the evidence, specifYing the issues presented for review and including any
 argument in support thereof. A party opposing the appeal shall file a response, if
 any, with the Court Clerk within five business days of the filing of the appellant's
 position statement. All position statements pertaining to an appeal of an
 interlocutory order should include: (1) a statement summarizing the facts of the
 case from the evidence admitted during the expedited hearing; (2) a statement
 summarizing the disposition of the case as a result of the expedited hearing; (3) a
 statement of the issue(s) presented for review; and (4) an argument, citing
 appropriate statutes, case law, or other authority.

 13
 APPENDIX

Exhibits:

1. First Report of Injury;
2. Wage Statement;
3. Notice of Denial;
4. Affidavit of Sallie Maples;
5. Medical Records ofN.P. Timothy Tobitt;
6. Medical Records of Dr. Vincent Novak;
7. Medical Records of Dr. Robert LaGrone;
8. Medical Records of Dr. Douglas Weikert;
9. Medical Records of Dr. Greg Kyser;
10. Ms. Maples recorded statement;
11. Federal-Mogul FMLA form dated July 24, 2012; and,
12. Federal-Mogul FMLA form dated August 22, 2014.

Technical Record:

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Ms. Maples' Memorandum in Support of the PBD;
4. Employer's Position Statement;
5. Supplemental PBD filed on August 12, 2015;
6. Supplemental DCN with additional issues;
7. Employee's Request for Hearing;
8. Employer's Pre-Hearing Statement; and,
9. Employee's Position Statement.

 14
 CERTIFICATE OF SERVICE

 I hereby certify that a true and correct copy of the Expedited Hearing Order for
Medical Benefits was sent to the following recipients by the following methods of service
on this the 4th day of January, 2016.

Name Certified Via Via Service sent to:
 Mail Fax Email
R. Steven Waldron X arlenesmith@comcast.net
Neil Mcintire X nmcintire@howell-fisher .com

 Penny Shrum, Clerk of Court
 Court of Workers' Compensation Claims
 WC.CourtClerk@tn.gov

 15