**FILED**

**February 17, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 2:40 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Sallie A. Maples | ) Docket No. 2015-04-0039 |
| | ) |
| v. | ) |
| | ) State File No. 34179-2015 |
| Federal-Mogul Corporation | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Robert Durham, Judge | ) |

---

### Affirmed and Remanded – Filed February 17, 2016

---

In this interlocutory appeal, the employee alleges she sustained gradual or cumulative trauma injuries to her hands over the course of several years' work with the employer. She additionally alleges she sustained a mental injury as a result of her cumulative trauma injuries. The employer denied the claim, asserting the employee failed to provide timely notice of her alleged injuries and failed to assert her claim within the one-year statute of limitations. Following the employee's request for an expedited hearing, the trial court conducted an evidentiary hearing and subsequently ordered the employer to provide a panel of physicians for treatment of the employee's bilateral hand arthritis. The trial court deferred acting on requests for temporary disability benefits and psychiatric care until an authorized physician evaluates the employee. The employer has appealed, asserting the trial court incorrectly resolved the notice and statute of limitations issues. After a careful review of the record, we affirm the trial court's order and remand the case for such additional proceedings as may be necessary.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Neil M. McIntire, Nashville, Tennessee, for the employer-appellant, Federal-Mogul Corporation

1

R. Steven Waldron, Murfreesboro, Tennessee, for the employee-appellee, Sallie A. Maples

**Factual and Procedural Background**

Sallie A. Maples ("Employee"), a fifty-two-year-old resident of DeKalb County, Tennessee, was initially hired by Federal-Mogul Corporation ("Employer") in 1987. After working there for eleven years, she voluntarily left Employer due to relocating her residence, but she returned four years later and resumed her employment with Employer. Although she performed several different jobs over the course of her work with Employer, her primary duties involved running a press, which required hand-intensive work. She testified she worked with an automatic press for ten years and was required to remove parts from the press and to remove excess flashing from the parts by pressing the parts against a grinder. She described having to "push really hard with my thumbs" to get the excess flashing off, which resulted in her fingers, thumbs, and hands hurting "all the time." For approximately one-and-one-half years before her last day of work on August 1, 2014, she operated a manual press that required her to constantly load and unload parts, which was very hand-intensive. She testified that "with the manual press is when I had to start putting my fingers in these things and rolling these 80-pound plates over this – it's maybe a 4-foot roller table that lifted up, because the press had different levels." She testified that the mold release product used in the manual press "always gummed up" the wheels, and that she "was pretty much dragging them" across the table. Employee testified that her thumbs and fingers worsened while she was working on the manual press.

Employee presented conflicting testimony concerning when the problems with her hands began. She testified, "I don't really know . . . an exact time line," but "it's been – maybe three or four years before . . . they got so bad I couldn't handle it." Employee provided a recorded statement to Employer's representative in April 2015 wherein she was asked, "[h]ow long has this been going on, and when did this problem start." Employee responded, "[t]he pain, it's been like a year, a year and a half, and just in August [2014] it has got to where I couldn't deal with it anymore."

Medical records document that in May 2010, Employee was seen by Nurse Practitioner Timothy Tobitt with complaints of "severe anxiety, panic attack, crying spells, and not able to sleep" due to learning that her daughter was pregnant. The report of the May 2010 visit notes that Employee was "complaining of pain with her hands due to labor of work and is needing to have surgery." The report indicates that the evaluation lasted almost an hour and a half due to the "hysterical nature of patient and inconsolability." Employee testified at the expedited hearing that no one told her she needed surgery for her hands and that "this must have been a self-diagnosis." The May 2010 report states that Employee "[r]eports area of involvement as hand, thumb, bilateral." It also describes her condition as "worsening, continuous, increased, burning

2

pain, sharp pain." The report additionally indicates that Employee's symptoms were "usually associated with work, squeezing anything with hands, holding any object, -- causes pain and problems with hands and thumbs." Employee was prescribed medication for her anxiety, but the report does not include any assessment or diagnosis concerning Employee's hand pain or otherwise suggest that Employee received treatment for her hand pain.

On August 5, 2010, Employee returned to the nurse practitioner complaining of "[j]oint pain, swelling, stiffness, redness with right great toe." The reported area of involvement was noted to be "joints, fingers, right great toe." The report of the August 2010 visit states that an examination of her fingers "reveals enlargement and inflammation, Heberden's nodes." The nurse practitioner's assessment included hand osteoarthritis and foot/toe pain. The report states that Employee was prescribed Indocin, but corticosteroids were withheld due to "previous patient complications."

A Family Medical Leave Act ("FMLA") form introduced in evidence indicates Employee requested and was approved leave from July 19, 2012 through August 6, 2012. The form indicates that it was completed in part by Nurse Practitioner Natalie Gilley.[1] That portion of the form indicates Employee was treated by the nurse practitioner on July 19, 2012; that Employee had "[s]evere osteoarthritis of hands – needs time off to rest hands and to evaluate effectiveness of medications"; and that Employee was "unable to do repetitive motions with hands until symptoms improve." Although the form indicates that Employer granted Employee leave, Employee testified she did not remember the 2012 form requesting FMLA leave and did not recall taking FMLA leave in 2012. She testified that, while she remembered seeing Nurse Practitioner Gilley for a cold and telling her about her hands, she did not recall asking for FMLA leave. On cross-examination, Employer's Human Resources representative was asked whether she had "any actual proof that [Employee] missed any time from work in 2012," and she responded, "No, I do not." She was also asked, "if [Employee] says she didn't, you couldn't dispute it, could you," and she responded, "I could not."

Employee returned to Nurse Practitioner Tobitt in September 2013 for a wellness exam, which Employee testified she had to have every year "for our insurance purposes." A September 21, 2013 report indicates Employee's chief complaint was "Wellness Exam," and that Employee "[r]eports symptoms of no complaints." The report states that Employee's musculoskeletal examination of her fingers "reveals multiple arthritic joints and contracture deformities in [her] fingers." The assessment states "[r]outine medical exam." However, Employee returned one week later reporting "symptoms of fatigue (malaise or lethargy), weakness or tiredness, hand/finger pain or problems, arthralgias, joint pain or problems, joint stiffness, pain with movement, pain limits active motion,

---

[1] Nurse Practitioner Gilley's records are not included in the record on appeal.

3

muscle spasms." The September 27, 2013 report states that Employee complained of "severe joint pain in both hands," and notes "[r]epetitive workload of bilat[eral] hands while performing tasks associated with her industrial job." The report states that the nurse practitioner made Employee aware that "we will not be using controlled medications to treat her pain and if she feel[s] like it is required, we will refer her to pain [management] service."

On June 30, 2014, Employee returned to Nurse Practitioner Tobitt complaining of generalized pain and joint stiffness at multiple sites. Following an examination, the nurse practitioner's assessment included "[r]heumatoid arthritis, [j]oint problems, [h]and (or finger) pain or problems, [and] [o]steoarthritis, multiple sites." The June 30, 2014 report indicates that a rheumatology referral and appointment were made for "TN Rheumatology–08/13/2014 @ 9:00 AM." Employee next saw Nurse Practitioner Tobitt on August 1, 2014 with complaints of "[h]and/finger symptom or complaint," and "[j]oint symptoms or complaints, nonspecific." At that visit the nurse practitioner referred Employee for hand and wrist x-rays and scheduled EMG/nerve conduction studies. Employee was advised to keep her August 13, 2014 rheumatology appointment.

At the expedited hearing, Employee testified that on August 1, 2014, she told her supervisor that she could no longer work because of her hands. She testified that her supervisor asked if her employment caused her hand problems and that she told him she did not know. Employee did not return to work after August 1, 2014. Hand and wrist x-rays taken on August 4, 2014 revealed moderate to severe degenerative joint disease in fingers on both hands.

On August 13, 2014, Employee was examined by Dr. Robert LaGrone, a rheumatologist, upon referral of Nurse Practitioner Tobitt. The record of the examination lists three reasons for the appointment: "1. Osteoarthritis 2. Hands hurt [and] 3. Was asking about workers['] comp paper work explained we do not see or evaluate for workers['] comp." Employee testified at the expedited hearing that she did not ask about workers' compensation, stating that Dr. LaGrone's staff repeatedly asked her if it was workers' compensation and she told them it was not.

Dr. LaGrone diagnosed Employee with "significant hereditary nodal [osteoarthritis]." His report states that Employee "wants me to notify her employer she can no longer work," and comments that "she would be having the same hand and knee trouble whether she was working or not." Additionally, the report includes Dr. LaGrone's opinion that "[h]er job is not responsible for her condition, though I would agree it would be more difficult to do anything requiring repetitive hand use."

Electromyogram and nerve conduction velocity studies performed on August 14, 2014 were interpreted as normal and showed no evidence of carpal tunnel syndrome, ulnar neuropathy, peripheral neuropathy, or radiculopathy. Employee was seen again on

4

August 14, 2014 by the nurse practitioner and was placed on physical restrictions and referred to Dr. Vincent Novak, a hand specialist. On August 22, 2014, Employer granted Employee FMLA leave, effective from August 18 to September 12, 2014, due to Employee's bilateral hand pain with numbness.

Employee saw Dr. Novak on August 25, 2014. In his report, Dr. Novak notes that Employee attributed her pain and problems in her thumbs to "'pushing with thumbs for 11 years' in repetitive manufacturing job." However, in a medical history form Employee completed for Dr. Novak she marked "no" in response to whether her problems were work-related. She also indicated in the form that she had "similar pains" for the "past two years." Dr. Novak included the following in the August 25, 2014 report of his examination of Employee's hands:

> Exam of both hands shows obvious significant saddle deformity both thumbs (right slightly more than left) where she has moderate to severe tenderness both thumb CMC joints, positive grind test with stiffness CMC joints reproduces her symptoms. Obvious Heberden's more than Bouchard's nodes both hands, predominantly affecting the index/long fingers with angular deformities noted, tenderness.

Dr. Novak's report states that Employee "expresses doubts as to whether or not she will be able to continue to work in a manufacturing-type job" and that Dr. Novak agreed that "it may benefit her to look for work that she may tolerate better with respect to her hands. Otherwise, activities as comfort allows without restriction from an orthopedic standpoint."

When Employee returned to the nurse practitioner on September 10, 2014, she was placed on "[n]o work status until surgical intervention." She was instructed to follow up with Drs. Novak and LaGrone, and to return to the clinic in two weeks. Employee returned to Dr. Novak on September 22, 2014. He injected both of Employee's thumbs with steroids and released her to return as needed. Employee testified that she subsequently attempted to return to Dr. Novak, but he declined to see her. She returned to the nurse practitioner on October 13, 2014 and was referred to Dr. Douglas Weikert and scheduled for bilateral hand MRI studies.

Dr. Weikert, an orthopedist, evaluated Employee on November 3, 2014. Employee testified that Dr. Weikert spent forty-five minutes to an hour with her and obtained a detailed description of the physical activities involved in her work. In his report, he notes that Employee worked in a "very heavy-handed job" for almost thirty years. The report describes the physical activities involved in Employee's job. It notes that Employee had "well developed Heberden's nodes at both index fingers and Bouchard's nodes in both PIP joints of the index fingers," as well as "basilar thumb

5

deformities bilaterally to an equal degree." The summary in Dr. Weikert's report includes the following:

> [S]he is a 50-year-old right handed lady with advanced bilateral basilar thumb arthritis and bilateral index finger osteoarthritis. *It is clear to me that given her job description and her 29 years doing this particular job, that the job itself is the primary activity responsible for the development of her arthritis.* She has had no acute traumatic events and has a negative family history of osteoporosis presenting in a young age. Again, her arthritis is symmetric in presentation and has correlated to the second decade of doing this particular time at [sic] work in terms of its progression.

(Emphasis added). Dr. Wiekert recommended surgical reconstruction of Employee's right basilar thumb joint with fusion of her index finger DIP joint.

Upon receipt of Dr. Weikert's written report on November 24, 2014, Employee notified Employer that she wanted to file a workers' compensation claim. She testified she received Dr. Weikert's written report in the mail and immediately took the report to Employer. Ten days later on December 4, 2014, Employee gave a recorded statement to a representative of Employer's workers' compensation carrier. On January 15, 2015, Employer denied the claim on the basis that the statute of limitations had expired.

Employee filed a Petition for Benefit Determination on May 5, 2015, seeking temporary disability benefits and medical benefits for her bilateral cumulative trauma injuries. On August 5, 2015, Dr. Greg Kyser, a psychiatrist, evaluated Employee at the request of her attorney. Dr. Kyser diagnosed Employee with mental distress "directly related to her physical pain and impairment, along with subsequent loss of functioning, diminished social relationships and concerns regarding finances and employability." In addition to recommending anti-anxiety medication, he opined that Employee had reached maximum medical improvement for her psychological condition as of the date of his evaluation, and he assessed a ten percent impairment rating to the whole body.

Employee filed a supplemental Petition for Benefit Determination on August 12, 2015 adding an alleged mental injury, which Employee claims resulted from her cumulative trauma injuries. Following the parties' unsuccessful efforts to resolve Employee's claims in mediation, a dispute certification notice was filed, and Employee requested an expedited hearing.

Following the hearing, the trial court determined the date of Employee's alleged cumulative trauma injuries to be the last day she worked for Employer, August 1, 2014, thereby vesting the Court of Workers' Compensation Claims with jurisdiction to hear Employee's case. The trial court further determined that, although conflicting medical opinions were produced concerning whether Employee's cumulative trauma condition

6

was caused primarily by her work with Employer, Employee "is likely to prevail on the issue of causation at a hearing on the merits." The trial court found "[t]here is nothing in the record to establish [Employee] knew or reasonably should have known her condition was work-related prior to November 3, 2014," and that the notice she gave to Employer of her alleged injuries on November 24, 2014, was timely. Additionally, the trial court determined that the May 5, 2015 Petition for Benefit Determination was filed "well within one year of her injury." The trial court ordered that Employer provide a panel of physicians "for treatment of [Employee's] bilateral hand arthritis primarily arising out of and in the course and scope of her employment."

Finally, the trial court denied Employee's request that Dr. Weikert be designated Employee's treating physician and deferred the issues concerning Employee's request for "temporary disability benefits and psychiatric care . . . until an authorized physician has evaluated [Employee]." Employer has appealed, asserting the trial court erred in finding that Employee gave timely notice of her alleged injuries and in determining that Employee's claim was filed within the applicable one-year limitations period.

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). A trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)    Violate constitutional or statutory provisions;
(B)    Exceed the statutory authority of the workers' compensation judge;
(C)    Do not comply with lawful procedure;
(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;
(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute. We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

7

## Analysis

### *Notice*

The requirement for an employee to give timely notice of a work injury has existed since the enactment of the Tennessee Workers' Compensation Act in 1919. *See* Workmen's Compensation Act, ch. 123, § 22 (1919). As initially enacted, the notice provisions were interpreted to indicate that the legislature could not have intended accidental injuries to include conditions developing by gradual process or cumulative trauma. *See Morrison v. Tenn. Consol. Coal Co.*, 39 S.W.2d 272 (Tenn. 1931). However, that interpretation has since changed, and specific statutory provisions have been enacted addressing notice requirements in gradual or cumulative trauma injuries.

The Workers' Compensation Law mandates that "[e]very injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury." Tenn. Code Ann. § 50-6-201(a)(1) (2015). That section additionally provides that "[n]o compensation shall be payable . . . unless the written notice is given to the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented." *Id.*

In 2001, section 50-6-201 was amended to add subsection (b), which addresses the time period in which an employee is required to provide notice of an injury that occurs as the result of gradual or cumulative events or trauma. As applicable here, subsection (b) provides as follows:

> In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee . . . shall provide notice of the injury to the employer within thirty (30) days after the employee:
>
> > (1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment; or
> >
> > (2) Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities.

Tenn. Code Ann. § 50-6-201(b) (2015).

8

Employer asserts in its brief on appeal that "ample evidence was placed in the record to support the conclusion that . . . [Employee] is obligated to provide notice to her Employer when she has constructive knowledge, or when she 'should have known' her work was causally related to her injuries." (Emphasis in original). Employer asserts the legislature "clearly and explicitly intended there to be objective and subjective components to the 'knowledge' portion of [section 50-6-201(b)]," and it contends the trial court erroneously concluded "essentially that the first time [Employee] 'should have known' that her injury was primarily cause[d] by her employment was when she was told so by a physician." Employer contends that "using physician diagnosis as the litmus test for the 'should have known' standard of notice would subvert [the] objective, reasonable person test into nothing more than superfluous language with no meaning."

Prior to the amendment adding subsection (b) to section 50-6-201 in 2001, an employee's reasonable lack of knowledge of the nature and seriousness of the employee's injury had been held to excuse the giving of notice within the thirty days specified in the statute. *See e.g.*, *CNA Ins. Co. v. Transou*, 614 S.W.2d 335, 337 (Tenn. 1981); *Davis v. Travelers Ins. Co.*, 496 S.W.2d 458, 459 (Tenn. 1973); *Brown Shoe Co. v. Reed*, 350 S.W.2d 65, 70 (1961). However, with the addition of subsection 50-6-201(b), the inquiry into whether an employee alleging a cumulative trauma injury has a reasonable excuse for failure to give the notice within thirty days must address the specific provisions of the amendment. Here, Employer does not contend that Employee knew or reasonably should have known that she suffered a work-related injury "that has resulted in permanent physical impairment" as contemplated in subsection (b)(1). Rather, Employer's focus is subsection (b)(2), which requires an employee to provide notice within thirty days after the employee "[i]s rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury and the employee knows or reasonably should know that the injury was caused by work-related activities." In essence, Employer contends Employee failed to give timely notice following the date that Employer argues Employee submitted an FMLA leave request in July 2012, and that she "reasonably should [have] know[n]" that her injury at that time was caused by work-related activities.

First, we are compelled to address Employer's assertion that the trial court "either ignores or fails adequately to synthesize significant factual proof." More particularly, we note Employer's allegation that "[c]ontrary to Employee's hearing testimony, she missed work from July 19 through August 3 pursuant to her July 2012 FMLA application related to her hands." Employee testified, in essence, that she did not have any recollection of taking any time off from work for her hands in 2012, and that she did not even remember the 2012 FMLA request. The only other witness to testify, Employer's Human Resources representative, was asked whether she had any proof that Employee missed any time from work in 2012, and the representative said, "No, I do not." The representative was asked, "[i]f [Employee] says she didn't [miss any work in 2012], you couldn't dispute it, could you," and she responded, "I could not." The representative was

additionally asked, "[b]ut, again, there's no - - there's nothing to dispute that [Employee] didn't miss a day in 2012, is there," and she responded, "[n]o, not at this point. No." In its brief, Employer references an affidavit of Employer's Human Resources representative dated January 8, 2016, four days after the trial court's expedited hearing order was issued, and an exhibit to the affidavit consisting of Employer printouts of Employee's attendance records from 2009 through December 14, 2015. These documents were not admitted into evidence at the expedited hearing and were not available to the trial court prior to the issuance of its expedited hearing order. "[W]e will not consider on appeal testimony, exhibits, or other materials that were not properly admitted into evidence at the hearing before the trial judge," *Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *13 n.4 (Tenn. Workers' Comp. App. Bd. May 18, 2015), and we again caution counsel against citing to or relying on documents on appeal that were not admitted into evidence during the expedited hearing or otherwise properly included in the record on appeal.

Second, as noted by the trial court, "there is nothing in the record to establish that [Employee] knew or reasonably should have known that her condition was work-related prior to November 3, 2014," which is the date Dr. Weikert told her he thought her condition was related to her work. Employee testified that she did not know before then that her arthritic condition was work-related. She specifically testified she told her supervisor on August 1, 2014 that she could no longer perform her work because of her hands, and when he asked her if it was work-related, she told him she did not know. The trial court also noted that nothing in Nurse Practitioner Tobitt's records indicates he advised Employee that her arthritis was causally related to her work, and that Dr. Novak did not address causation in his reports. Additionally, Employee indicated in the medical history form she completed for Dr. Novak that her condition was not work-related. On August 13, 2014 Dr. LaGrone, the rheumatologist, advised Employee that her arthritis had nothing to do with her job. While Nurse Practitioner Tobitt's records indicate that Employee told him in May 2010 that she had hand pain "due to labor of work," and that she "needed to have surgery," the preponderance of the evidence does not suggest that Employee knew or reasonably should have known that her condition was caused by or arose primarily out of her work-related activities. Employee's mere suspicion as to the cause of her condition, without more, is insufficient in this case to constitute knowledge of a causal connection between her arthritis and her work activities. Considering all of the facts in their aggregate and the standards imposed by sections 50-6-201(a)(1) and (b)(2), we conclude that Employee had a reasonable excuse for her failure to give notice within thirty days of her August 1, 2014 injury. Accordingly, we cannot say that the evidence preponderates against the trial court's determination that Employee provided adequate notice to Employer on November 24, 2014.

10

Although Employer has not expressly challenged on appeal the trial court's determination that it had subject matter jurisdiction, Employer asserts in its brief that no later than May 2010 Employee "developed the opinion that she needed surgery to correct the pain in her hands **that was due to her work.**" (Emphasis in original). Employer argues that "[t]he 'should have known' reasonable person standard, when applied to the facts of this case, inexorably leads to the conclusion that Employee should have known her employment was the primary cause of her injury at least as early as July 2012," which Employer posits in support of its assertion that "the statute of limitations began to run at that point."

Tennessee Code Annotated section 50-6-203 provides that "[i]n instances when the employer has not paid workers' compensation benefits . . . the right to compensation . . . shall be forever barred, unless the notice required by § 50-6-201 is given to the employer and a petition for benefit determination is filed with the bureau . . . within one (1) year after the *accident resulting in injury*." Tenn. Code Ann. § 50-6-203 (2015) (emphasis supplied). The Tennessee Supreme Court has long noted that identifying the "accident resulting in injury" can be problematic in cases of gradually occurring or cumulative trauma injuries. *See Lawson v. Lear Seating Corp.*, 944 S.W.2d 340 (Tenn. 1997). In *Lawson*, the Supreme Court adopted a "last day worked" rule that applies "only to repetitive stress injuries, i.e., the unexpected or unusual injuries that result from the ordinary or usual strain or exertion of the employee's job." *Id.* at 342. Although section 50-6-203 has been amended several times since *Lawson*, the provision barring the right to compensation unless a claim or petition is filed within one year "after the accident resulting in injury" has continued without substantive change. As the Supreme Court noted in *Lawson*, its "holding today established a clear point at which the limitation period begins to run." *Id.* The purpose of the "last day worked" rule is to "fix a date certain when the employee knows or should know he or she sustained a work-related injury so that workers with gradual injuries will not lose the opportunity to bring claims due to time limitations." *Bone v. Saturn Corp.*, 148 S.W.3d 69, 73 (2004) (overruled on other grounds by *Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 708 (Tenn. 2007)).

Although *Lawson* was decided long before the effective date of the 2013 Workers' Compensation Reform Act, the Supreme Court's holding and its rationale in adopting the "last day worked rule" for gradual or cumulative trauma injuries was not directly addressed in the 2013 Reform Act. The amended definition of "injury" specifically contemplates cumulative trauma conditions and provides that such conditions may be deemed compensable if they arose primarily out of and in the course and scope of the employment. *See* Tenn. Code Ann. § 50-6-102(14) (2015). Moreover, section 50-6-201(b), which prescribes when notice must be given in a gradual injury or cumulative trauma case, was not changed by the 2013 Reform Act. Subparagraph (b)(2) expressly references the date an employee is unable to continue performing "normal work

11

activities" as critical to the analysis of when the notice requirement can be triggered. This, in turn, helps define a "date of injury" in gradual injury and cumulative trauma cases. Thus, we conclude that the "last day worked" rule remains viable when the applicable provisions of the 2013 Reform Act are construed "fairly, impartially, and in accordance with the basic principles of statutory construction," and "in a manner favoring [n]either the employee [n]or the employer." Tenn. Code Ann. § 50-6-116 (2015).

In the instant case, the trial court determined that August 1, 2014 was Employee's last day of work and the date of her injury, and that her May 5, 2015 Petition for Benefit Determination was, therefore, "well within one year of her injury" such that "the statute of limitations does not bar [Employee's] claim." The parties do not dispute that Employee's last day of work was August 1, 2014. Accordingly, the trial court properly applied the "last day worked" rule and correctly determined that the statute of limitations does not bar Employee's claim.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case for further proceedings as necessary.

David F. Hensley, Judge
**Workers' Compensation Appeals Board**

12

**FILED**

**February 17, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 2:40 P.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Sallie A. Maples | ) | Docket No. 2015-04-0039 |
| | ) | |
| v. | ) | |
| | ) | State File No. 34179-2015 |
| Federal-Mogul Corporation | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 17th day of February, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **R. Steven Waldron** | | | | | X | arlenesmith@comcast.net |
| **Neil McIntire** | | | | | X | nmcintire@howell-fisher.com |
| **Robert Durham, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov