

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

FILED
Feb 11, 2026
11:15 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Bobur Isoyev

v.

Nippon Paint Automotive Americas, Inc., et al.

Appeal from the Court of Workers' Compensation Claims
Thomas L. Wyatt, Judge

Docket No.    2024-10-4374

State File No.    860243-2024

---

**Affirmed and Remanded**

---

The employer avers the trial court erred in finding the employee was likely to prove at trial that he provided timely notice of an alleged gradual injury and in awarding medical benefits in this interlocutory appeal. The employee began having low back pain after being assigned additional work duties and sought medical care on his own, including physical therapy. Following his termination from the employer, the employee's primary care physician referred him for an MRI. The employee filed a petition for benefit determination fifteen days after the referral, and the employer denied the claim for lack of timely notice. By the time of the expedited hearing, the employee had obtained a medical opinion from a neurosurgeon recommending surgery and opining that the injury and need for surgery were primarily caused by the employee's gradual work injury. The employer obtained a records review from a pain management specialist, who opined the employee's herniated discs were likely degenerative in nature. Following an expedited hearing, the trial court found the employee was likely to be successful at a trial in proving he gave timely notice of a work-related injury, credited the employee's expert over the employer's expert as to causation, and ordered the employer to provide a panel. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's order and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

J. Allen Callison, Nashville, Tennessee, for the employer-appellant, Nippon Paint Automotive Americas, Inc.

Bobur Isoyev, employee-appellee, pro se

**Factual and Procedural Background**

Bobur Isoyev ("Employee") began working as an engineer for Nippon Paint Automotive Americas, Inc. ("Employer"), in August 2023. At some point thereafter, he was reassigned as a maintenance engineer, which required him to perform manual labor, including cleaning storage tanks. In October or November 2023, Employee began noticing pain in his low back but continued working his regular schedule. He did not have a primary care physician, and, in February 2024, he sought to establish care with UT Academic Internal Medicine ("UT").

Employee's first appointment at UT was with Dr. Kaitlin Detmar on February 20, 2024. At that visit, Employee reported having low back pain radiating into his left leg, stating he had "been doing more manual labor at work due to being short staffed but does not remember [a] significant event during which he hurt his back, hip, or leg." He also stated he had been taking "Tylenol daily and ibuprofen pm," as well as doing home exercises, which provided only partial relief. Dr. Detmar referred Employee to physical therapy and asked him to follow up with her in six months. Employee began physical therapy in March 2024 but had to miss several appointments due to work.

Employer terminated Employee on June 7, 2024.[1] Employee returned to UT on June 11, where he saw Dr. Timothy Mullican. Employee reported that his back pain was worsening, that it was "affecting his ability to work," and that it was "exacerbated by any heavy lifting." He also described intermittent night sweats that soaked his sheets. Dr. Mullican referred Employee for an MRI, which was performed the following day. Before he received his results, Employee filed a petition for benefit determination ("PBD") on June 26, 2024, alleging an injury to his back. The PBD listed a date of injury of October 31, 2023.

Employee saw Dr. David Wallace, a neurosurgeon, on July 16, 2024, to review his MRI results. At that time, Dr. Wallace informed Employee that he had a large disc fragment at L4-5 and a "likely significant" fragment at L5-S1. Dr. Wallace indicated Employee was a candidate for a steroid injection, or alternatively, a discectomy. Employee was not prepared to proceed with either, so Dr. Wallace prescribed ibuprofen, a muscle relaxer, and another anti-inflammatory with instructions for Employee to follow up with him in two months. Employee returned to Dr. Wallace on October 18, 2024, at which time he indicated he had some relief with the medications and that he was working in a different job, which had "helped" his pain. Dr. Wallace again offered Employee a steroid injection, but Employee stated he had a fear of needles and was instead considering the discectomy. At his next appointment in February 2025, Employee indicated the medications were not providing any relief. Dr. Wallace stated Employee had failed conservative treatment and recommended Employee proceed with a discectomy at L4-5 and L5-S1. Employee

---

[1] There is no information in the record as to the circumstances of Employee's termination.

informed Dr. Wallace that he was seeking workers' compensation benefits, and Dr. Wallace stated he would complete a "medical legal opinion" separately.

Dr. Wallace completed a questionnaire at Employee's request on March 7, 2025. In that questionnaire, Employee asked Dr. Wallace for a diagnosis of his work injury, which Employee described as being caused by "lifting, carrying, and dragging heavy chemical hoses, pumps, salt bags, liquid filled drums, totes, and skids without proper tools" on October 30, 2023. Dr. Wallace diagnosed Employee with sciatica of the left side, protrusion of a lumbar intervertebral disc, and spinal stenosis of the lumbar region. He responded in the affirmative when asked whether the work activities Employee described "contributed" more than fifty percent to causing a new injury and Employee's need for medical treatment, including the treatment he had already provided as well as the recommended surgery. Dr. Wallace also confirmed he had not taken Employee "completely off work."

Employer obtained a records review with Dr. Jeffrey Hazlewood, a pain management specialist, in August 2025. Dr. Hazlewood reviewed records from the above physicians, as well as physical therapy records, chiropractic records, the MRI scan, and Employee's deposition. In his report, Dr. Hazlewood noted various academic studies regarding disc herniations and the likelihood they would be caused by the aging process and degenerative disc disease as opposed to acute or repetitive injury. In his conclusion, he opined, "I cannot state that it is [fifty percent] or more likely . . . that this gentleman's disc herniation was caused by his employment . . . ."

An expedited hearing was held on November 5, 2025. Employer argued that Employee failed to give proper notice of his alleged back injury and that, even if he did give proper notice, his back injury and need for medical treatment did not arise primarily out of his employment. Employee testified that he began to notice his back issues in October or November of 2023 after he was required to begin performing manual labor as part of his new position, which included heavy lifting. Employee testified he told his manager, Mr. Prakesh Patel, that he was experiencing difficulties. Although he could not recall *when* he informed Mr. Patel, he believed it was sometime between November 2023 and February 2024. Employee alleged he gave written notice of the injury through email and text, but he no longer had access to that documentation because he no longer worked for Employer.[2]

Although there was no evidence that a physician had restricted Employee's work activities, Employee testified that, on at least two days, he modified his work duties due to

---

[2] Employee sent requests for production to Employer, seeking all electronic communications between himself and Mr. Patel, as well as other individuals working for Employer. Employer produced several records, which Employee filed with the trial court, although none of them discussed the alleged work injury. Employee indicated at the hearing he believed Employer had failed to produce all of the records, but he did not file a motion to compel.

back pain. He could not recall the specific dates, making statements such as: "I missed a few days when I had very painful times, I could not be able to tolerate the pain because I was using on the counter medications"; "I talked with [] my manager, and he said, go ahead, take your couple days off"; and "I had a few times Mr. Patel said, 'Bob, take a couple days off if you want.' I took it off and I took heavier pain medications." However, Employee also testified that, even when he took those days off, he still performed his work duties, stating that he "missed a couple times, a few times, one or two days, and came back to work. And – but during that time, when I missed even, I was working remotely because I'm an engineer. I do some documentation. I worked from home, I would say, okay?" Finally, Employee testified that he believed his back pain was caused by heavy lifting at work in October or November 2023, and that is what prompted him to seek medical treatment in February 2024.

Employee's manager, Mr. Patel, testified via videoconference. Mr. Patel no longer worked for Employer and denied that Employee ever reported an injury or that he and Employee ever had a conversation about an injury at work.

In its November 19, 2025 order, the trial court determined Employee would not likely prevail at trial in showing that he gave written or verbal notice of a work accident to Employer before he filed his PBD based on his vague account of his alleged conversation with Mr. Patel and the lack of any evidence in the written communications provided to the court that he reported a work injury. However, because Employee claimed a gradual injury, the court analyzed whether Employee provided notice within fifteen days of the date he knew or should have known he had an injury resulting in permanent physical impairment *or* within fifteen days of the date he knew or should have known he was "rendered unable to continue to perform [his] normal work duties" pursuant to Tennessee Code Annotated section 50-6-201(b)(1)-(2). Employer argued that Employee should have known his back injury was permanent when he underwent the MRI on June 12. Although the court expressed its skepticism that undergoing an MRI was equivalent to having knowledge of a permanent impairment, it determined that, regardless, the PBD was filed within 15 days of the date of the MRI. The court further found that the record did not reflect that Employee was ever unable to perform his work duties due to his back condition. As a result, the court determined that, under those circumstances, Employee would likely prevail in establishing that he had given proper notice of his gradually occurring work injury. The court then evaluated the expert opinions and determined Dr. Wallace, as a neurosurgeon who had treated Employee, was in a better position to "assess [Employee's] impairment" than Dr. Hazlewood, a pain specialist that does not perform surgery and had never seen Employee. It ordered Employer to provide a panel of three spine specialists. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See*

4

Tenn. Code Ann. § 50-6-239(c)(7) (2025).  When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to credibility determinations made by the trial court.  *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009).  However, "when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations."  *Edwards v. Peoplease, LLC*, No. W2024-01034-SC-R3-WC, 2025 Tenn. LEXIS 514, at *18 (Tenn. Dec. 22, 2025).  Thus, when medical proof is presented by deposition, "the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony."  *Id.*  Moreover, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions.  *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013).  We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer.  Tenn. Code Ann. § 50-6-116 (2025).

## Analysis

The only issue raised on appeal is whether the trial court erred in its determination that Employee is likely to prevail in proving at trial that he gave timely notice of his gradual injury.[3]  With respect to the provision of timely notice in gradual injury cases, Tennessee Code Annotated section 50-6-201(b) provides:

> In those cases where the injuries occur as a result of gradual or cumulative events or trauma, the injured employee or the injured employee's representative shall provide notice of the injury to the employer within fifteen (15) days from the date the employee:
>
> (1)     Knows or reasonably should know that the employee has suffered a work-related injury *that has resulted in permanent physical impairment*; or
>
> (2)     Is rendered unable to continue to perform the employee's normal work activities as the result of the work-related injury, *and* the employee knows or reasonably should know that the injury was caused by work-related activities.

---

[3] Employer has not raised the trial court's assessment of the medical proof as an issue on appeal.  Therefore, we consider it waived for purposes of this interlocutory appeal.  *See Moore & Seiferth v. Ingles Markets, Inc.*, No. 2015-02-0193, 2015 TN Wrk. Comp. App. Bd. LEXIS 54, at *4 (Tenn. Workers' Comp. App. Bd. Nov. 4, 2015).

(Emphases added.)[4]  We have previously analyzed this portion of the statute and developed a framework for determination of proper notice in *Ernstes v. Printpack, Inc.*, No. 2020-07-0617, 2023 TN Wrk. Comp. App. Bd. LEXIS 25 (Tenn. Workers' Comp. App. Bd. June 6, 2023), *aff'd*, *Ernstes v. Printpack, Inc.*, No. W2023-00863-SC-R3-W3, 2024 Tenn. LEXIS 1 (Tenn. Workers' Comp. Panel Jan. 2, 2024) ("*Ernstes II*").  The first step in that framework is whether timely, written notice of the injury has been provided, which requires a date of injury to be established.  *Id.* at *34.

Here, Employer has stipulated that subsection (b)(1) is inapplicable, and thus we need not consider whether Employee knew or reasonably should have known he had a permanent injury more than fifteen days prior to filing his PBD.  Furthermore, it is undisputed that Employee believed his back pain was caused by work-related activities, possibly as early as October 2023.  Therefore, for purposes of this appeal, the only pertinent question is whether Employee was "rendered unable to continue to perform [his] normal work activities as a result of work-related injury," which would trigger his obligation to provide notice within fifteen days. Tenn. Code Ann. § 50-6-201(b)(2) (2024). In other words, "at what point in time [was he] unable to engage in or . . . restricted from normal work activities due to a work-related condition." *White v. Federal Express Corp.*, No. 2021-08-1065, 2025 TN Wrk. Comp. App. Bd. LEXIS 8, at *19 (Tenn. Workers' Comp. App. Bd. Mar. 6, 2025).

Here, the record contains no evidence that any physician assigned restrictions that would have prevented Employee from performing his normal work duties between the date he began having symptoms in October or November 2023 and his termination on June 7, 2024.  Indeed, the questionnaire completed by Dr. Wallace states he had not placed any restrictions on Employee's work activities.

In support of its argument, Employer points to Employee's testimony concerning the two days Employee testified that he worked from home due to his back pain.  Noting a lack of precedent interpreting the phrase "unable to continue to perform . . . normal work activities," Employer argues that Employee's decision to modify his own work duties to perform his clerical work from home on days he was in pain qualifies as an inability to perform his work duties and thus triggered his obligation to provide notice of a work injury. However, Employer's argument does not consider the long line of Tennessee cases discussing the application of the "last day worked" rule to gradual injuries, which helps identify the date of injury in such cases for purposes of triggering both the notice requirement and the applicable statute of limitations.

---

[4] Tennessee Code Annotated section 50-6-201 was amended as of July 1, 2025, but the present case arose prior to the effective date of such amendments, so we have relied on the language of section 201 as it existed prior to the most recent amendments.  Furthermore, the language relevant to our analysis did not change.

We previously discussed the "last day worked rule" in *Nickerson v. Knox County Government*, in which we explained:

[I]n *Building Materials Corp. v. Britt*, 211 S.W.3d 706 (Tenn. 2007), the employee claimed he suffered a gradual injury to his low back. In analyzing the date-of-injury issue, the Tennessee Supreme Court explained, "[i]n the case of a gradually occurring injury, the last-day-worked rule is used to help identify a date on which the injury occurred." *Id.* at 711. The Court considered cases from other jurisdictions and concluded that "the date of injury for a gradually occurring injury is the last day worked." *Id.* at 712 (citing *Lawson v. Lear Seating Corp.*, 944 S.W.2d 340, 341-42 (Tenn. 1997)).

However, in *Hix v. TRW, Inc.*, M2007-02822-WC-R3-WC, 2009 Tenn. LEXIS 285 (Tenn. Workers' Comp. Panel June 12, 2009), a hearing loss case, the Appeals Panel considered whether the "last day worked" rule dictated the identification of the date of injury in every gradual injury case. Specifically, the Panel explained the issue as follows:

[T]he question before this panel is whether the "last day worked" rule should be applied where the evidence clearly establishes a date prior to the last day worked where injurious exposure ceased, the testimony clearly establishes that no further deterioration of the employee's condition occurred as a result of a workplace injury after the last day of injurious exposure, and the employee ceased working for the employer for reasons unrelated to the workplace injury.

*Id.* at *17-18. The Appeals Panel concluded that the date of injury is "the last day the employee was exposed to the work activity that caused the injury," which may not be the last day worked. *Id.* at *19 (quoting *Barnett v. Earthworks Unlimited, Inc.*, 197 S.W.3d 716, 721-22 (Tenn. 2006)). *See also Buckingham v. Fid. & Guar. Ins. Co.*, No. M2006-01587-WC-R3-WC, 2007 Tenn. LEXIS 910, at *13 (Tenn. Workers' Comp. Panel Oct. 25, 2007) (In a carpal tunnel syndrome case, the Appeals Panel noted that the Supreme Court had "squarely declined to adopt . . . the date the injury manifests itself as the date of injury," looking instead to the date the employee last engaged in the work activity causing the injury.). Thus, in cumulative trauma cases, in which the employee's condition is considered a "new injury each day at work," *see Barnett*, 197 S.W.3d at 721, a court may determine the date of injury by considering the last day worked or the date the employee was last exposed to the work activity that caused the injury.

*Nickerson v. Knox Cty. Gov't*, No. 2019-02-0559, 2020 TN Wrk. Comp. App. Bd. LEXIS 52, at \*12-13 (Tenn. Workers' Comp. App. Bd. Sept. 2, 2020) (footnotes omitted), *aff'd*, *Nickerson v. Knox Cty. Gov't*, No. E2020-01286-SC-R3-WC, 2021 Tenn. LEXIS 124 (Tenn. Workers' Comp. Panel June 8, 2021).

Here, Employee testified that he performed clerical tasks associated with his job at home for two days due to pain in his back; however, the record indicates he returned to work performing all of his normal job duties until his termination on June 7, 2024. As such, each day in which Employee performed the manual labor tasks of his job, to which he and Dr. Wallace primarily attributed his back condition, could be considered a new injury at work. *See Barnett*, 197 S.W.3d at 721. At this interlocutory stage of the case, there is no evidence to suggest that Employee's exposure to the injurious conditions of his employment had ended prior to his termination. Thus, nothing in the record indicates Employee was unable to perform his normal work duties in the months preceding his termination or that his termination was due to any physical restrictions or his inability to perform the work. Therefore, at this interlocutory stage of the case, there is no evidence indicating Employee's notice requirement was triggered prior to the date he filed his PBD. Accordingly, the preponderance of the evidence supports the trial court's determination that Employee is likely to prevail at trial in showing he gave timely notice of his alleged gradual injury.

**Conclusion**

For the foregoing reasons, we affirm the trial court's order compelling Employer to provide a panel of spine specialists and remand the case. Costs on appeal are taxed to Employer.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Bobur Isoyev | Docket No. 2024-10-4374 |
| v. | State File No. 860243-2024 |
| Nippon Paint Automotive Americas, Inc., et al. | |
| Appeal from the Court of Workers' Compensation Claims Thomas L. Wyatt, Judge | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 11th day of February, 2026.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Allen Callison | | | | X | allen.callison@mgclaw.com andrea.berrier@mgclaw.com |
| Bobur Isoyev | | | | X | bobisoyev@gmail.com |
| Thomas L. Wyatt, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov